MONROE COUNTY CLERK'S OFFICE

THIS IS NOT A BILL. THIS IS YOUR RECEIPT.

Receipt # 2432764

Book Page CIVIL

No. Pages: 3

Instrument: EFILING INDEX NUMBER

Control #: 202007100159
Index #: E2020004474

Date: 07/10/2020

Time: 9:56:24 AM

Return To:
DAVID SCOTT STERN
One East Main Street
Rochester, NY 14614

Jackling, William T

Brighthouse Life Insurance Company
Travelers
Metlife
Genworth
Brighthouse Financial

| | |
|---|---|
| State Fee Index Number | $165.00 |
| County Fee Index Number | $26.00 |
| State Fee Cultural Education | $14.25 |
| State Fee Records Management | $4.75 |
| Total Fees Paid: | $210.00 |

Employee: MJ

State of New York

MONROE COUNTY CLERK'S OFFICE
WARNING – THIS SHEET CONSTITUTES THE CLERKS ENDORSEMENT, REQUIRED BY SECTION 317-a(5) & SECTION 319 OF THE REAL PROPERTY LAW OF THE STATE OF NEW YORK. DO NOT DETACH OR REMOVE.

JAMIE ROMEO

MONROE COUNTY CLERK

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF MONROE**

------------------------------------------X

Index No.

WILLIAM T. JACKLING,
as Executor of the Estate of ,
Martha A. Jackling,

Date of Filing:

**Plaintiff,**

**SUMMONS WITH NOTICE**

Monroe County is designated by Plaintiff as the place of trial

-vs-

Venue is based upon Plaintiff's address

BRIGHTHOUSE LIFE INSURANCE COMPANY, TRAVELERS, METLIFE, GENWORTH, BRIGHTHOUSE FINANCIAL,

**Defendants**

Plaintiff resides at 11 Old Brook Trail Honeoye Falls, New York 14472

------------------------------------------X

**TO THE ABOVE-NAMED DEFENDANTS:**

**YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on Plaintiff's Attorneys within twenty (20) days after the service of this summons, exclusive of the day of service (or within thirty (30) days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to answer or appear, judgment will be taken against you by default for the relief demanded in the notice set forth below and in the complaint.

Dated: July 9, 2020
Rochester, New York

**ELLIOTT STERN CALABRESE, LLP**

David S. Stern, Esq.
Office & P.O. Address:
One East Main Street
Rochester, New York 14614
Tele: (585) 232-4724
Fax: (585) 232-6674
Email: dstern@elliottstern.com

**NOTICE:**

The nature of this action is to seek an award for damages suffered by plaintiff arising from a breach of contract under the terms of a long-term care policy, LC4176400 (Long Term Care Policy). a copy of which is annexed to the notice and incorporated herein as if fully set forth herein.

**Nature of the claims** is for breach of contract, fraudulent misrepresentation, fraudulent inducement, tortious interference of contract, violation of implied covenant of good faith and fair dealing in handling Plaintiff's claim, acting in bad faith in denying benefits, inappropriately delaying payments and paying less than owed under the policy requirements and obligations, in failing to honor the contractual agreement between the parties and not paying what was due under the policy, in committing fraud and abuse suffered upon the Plaintiff, in failing to insure against the need of expensive home care as required under the policy and agreed to between the parties, resulting in loss of substantial financial assets suffered by Plaintiff and other consequential damages.

Plaintiff is seeking contract damages, consequential damages, interest, and the costs and disbursements for having to bring this action including an award of reasonable attorney's fees and punitive damages.

MONROE COUNTY CLERK'S OFFICE

THIS IS NOT A BILL. THIS IS YOUR RECEIPT.

Receipt # 2432770

Book Page CIVIL

Return To:
DAVID SCOTT STERN
One East Main Street
Rochester, NY 14614

No. Pages: 19

Instrument: EXHIBIT(S)

Control #: 202007100165
Index #: E2020004474

Date: 07/10/2020

Jackling, William T

Time: 9:57:29 AM

Brighthouse Life Insurance Company
Travelers
Metlife
Genworth
Brighthouse Financial

Total Fees Paid: $0.00

Employee:

State of New York

MONROE COUNTY CLERK'S OFFICE
WARNING – THIS SHEET CONSTITUTES THE CLERKS ENDORSEMENT, REQUIRED BY SECTION 317-a(5) & SECTION 319 OF THE REAL PROPERTY LAW OF THE STATE OF NEW YORK. DO NOT DETACH OR REMOVE.

JAMIE ROMEO

MONROE COUNTY CLERK

202007100165 Index #: E2020004474



# YOUR TRAVELERS INSURANCE POLICY

Graham
385-3600
x 3012

Travelers Life & Annuity
A member of citigroup

L-12318-1 REV. 12/98

TravelersInsurance
A member of citigroup

**THE TRAVELERS INSURANCE COMPANY • One Tower Square • Hartford, Connecticut • 06183**
**A STOCK COMPANY**

# LONG TERM CARE INSURANCE POLICY

## THIS IS A LEGAL CONTRACT - READ YOUR POLICY CAREFULLY

**This policy participates in the New York State Partnership for Long Term Care Program. The Extended Medicaid Coverage offered with this policy permits You to receive full Medicaid benefits, medical as well as long term care, without regard to your assets. You must however, contribute Your income towards the cost of Your care. Please read Your consumer agreement, which You signed, carefully for details.** We are pleased to provide You with the benefits of this policy. Please read this policy and the copy of Your application. We want to be sure that they are correct. If there is any error, please tell Us as soon as possible. We will then make any change necessary. We have issued this policy in consideration of the payment of premium and the statements made in the application. The application is part of this policy. The policy takes effect on the Policy Date shown on Page 3 or as provided in the application. The policy must be renewed by the timely payment of premium each term in order for coverage to remain in effect. The time of day on which coverage begins or ends is 12:01 A.M. in the time zone in which You live.

**This policy is intended to be a qualified long term care insurance contract under section 7702B(b) of the Internal Revenue Code of 1986, as amended. This policy is intended to qualify for New York State income tax treatment and is intended to be deductible for New York State income tax purposes.**

**BINDING ARBITRATION OPTION FOR RESOLUTION OF DISPUTES REGARDING DENIED CLAIMS -** In addition to the usual options available to You to seek recourse for claims denied by Us, You have the option of arbitration under the project where You have been notified that Your claim may have been denied in error. Where You elect to use arbitration in contesting denied claims, the judgment of the arbiter shall be binding on Us and You. However, both You and We may use information made available through the arbitration process if You should decide to litigate.

**GUARANTEED RENEWABLE FOR LIFE -** As long as the premium is paid when due, We cannot change any provision of this policy or cancel it during Your lifetime. However, We can make changes to this policy when they are changes which We are obligated to make by government officials due to this policy's participation in the New York State Partnership for Long Term Care Program. PREMIUMS MAY BE CHANGED ON A CLASS BASIS ONLY-See Page 19. Any changes We make to ensure continued qualification of this policy for federal or state tax purposes will be offered to You for acceptance or rejection.

**FREE LOOK - YOUR RIGHT TO EXAMINE THIS POLICY -** If You decide not to keep this policy, return it to Our Office or to Our agent to be cancelled within 30 days of its delivery. After the policy is returned it will be considered to have never been in effect. Within 30 days of its return, We will refund all premium paid for this policy.

Signed at Hartford, Connecticut

President

NYS PARTNERSHIP
FOR LONG-TERM CARE

TABLE OF CONTENTS


| | |
|---|---|
| Renewability | Front Cover |
| Free Look - Right to Examine Policy | Front Cover |
| Policy Schedule | Page 3 |
| Definitions | Page 4 |
| Special Partnership Provisions | Page 8 |
| BASIC POLICY BENEFITS | |
| Benefits for Nursing Facility Care | Page 10 |
| Benefits for Bed Reservation | Page 11 |
| Benefits for Community-Based Care | Page 12 |
| Home Health Care | Page 12 |
| Adult Day Care | Page 12 |
| Assisted Living Care | Page 13 |
| Benefits for Respite Care | Page 13 |
| Benefits for Care Coordination | Page 14 |
| Benefits for Alternate Plan of Care | Page 15 |
| POLICY EXCLUSIONS | Page 16 |
| GENERAL PROVISIONS | |
| Contest | Page 18 |
| Payment of Claims | Page 18 |
| Premium Payment | Page 19 |
| Waiver of Premium | Page 19 |
| Grace Period | Page 19 |
| Reinstatement | Page 20 |
| Extended Grace Period Due to Chronic Illness | Page 20 |
| Termination | Page 20 |
| Annual 5% Compounded Benefit Inflation Provision | Page 22 |

A copy of the Application and any Optional Riders follow Page 22.


POLICY SCHEDULE

| | | | |
|---|---|---|---|
| INSURED | MARTHA A JACKLING | | |
| POLICY NUMBER | LC4 176400 | POLICY DATE | JAN 28,2000 |
| ISSUE AGE | 63 | DATE OF ISSUE | JAN 28,2000 |

| BASIC POLICY COVERAGE DETAILS | PREMIUM |
|---|---|
| NURSING FACILITY CARE DAILY BENEFIT AMOUNT | $140.00 |
| COMMUNITY-BASED CARE DAILY BENEFIT AMOUNT | $70.00 |
| BENEFIT PERIOD * | 3 YEARS |
| ELIMINATION PERIOD | 20 DAYS - out |
| INITIAL POLICY MAXIMUM | $153,300.00 |
| BASIC POLICY INITIAL ANNUAL PREMIUM . . . . . . . . . . . | $1,946.00 |
| OPTIONAL BENEFIT DETAILS: | |
| REDUCED BENEFITS OPTION . . . . . . . . . . | ELECTED |
| TOTAL INITIAL ANNUAL PREMIUM IS . . . . . . . . . . . . . | $1,459.50 |

IMPORTANT NOTICE:

This policy has been issued with the 20% Healthy Spouse Discount. If the policy of either spouse is returned during the FREE LOOK period, is lapsed, or is cancelled (for any reason other than death) at any time, the Healthy Spouse Discount of 20% will be decreased to 10% on the remaining inforce policy.

* Benefits will be paid until the Policy Maximum has been reached which may be longer than the stated Benefit Period (does not apply if the Unlimited Benefit Period is selected).



H-NYLC4JQ*S*H-NYLC4DQ*H-NYLC4F2*H-NYLC4BQ*H-NYLC4GQ*H-NY5I-2*LTC-ID*LTCQUAL *PRIVACY*H-1502*

This policy issued with Preferred discount.

## DEFINITIONS

**Activities of Daily Living (ADLs)** - Activities used to measure Your need for long term care. We require written certification by a Licensed Health Care Practitioner of Your inability to perform (without Substantial Assistance from another individual) at least 2 out of 6 ADLs for a period of at least 90 days due to a loss of functional capacity. The ADLs are as follows:

1. **Dressing** - The ability to put on and take off items of clothing and/or prosthetic devices that are worn daily, including the ability to obtain and replace those items from their normal storage area in the immediate environment.
2. **Eating** - The ability to move food from a receptacle into the body once the food has been prepared and made available to You.
3. **Transferring** - The ability to change positions, such as moving from bed to standing, chair to standing, bed to chair and the reverse of these activities.
4. **Toileting** - The ability to get to and from the bathroom, and to take care of bowel and bladder needs, including the ability to transfer on and off the toilet, to cleanse oneself after elimination and to adjust clothing.
5. **Bathing** - The ability to wash oneself in either a tub or shower, including getting into and out of the tub or shower, or to wash oneself by sponge bath.
6. **Continence** - The ability to maintain control of bowel and bladder function; or, when unable to maintain control of bowel or bladder function, the ability to perform associated personal hygiene (including caring for catheter or colostomy bag).

**Chronically Ill Individual -** Means any individual who has been certified by a Licensed Health Care Practitioner as: 1) Being unable to perform (without Substantial Assistance from another individual) at least 2 ADLs for a period of at least 90 days due to a loss of functional capacity; or 2) Requiring Substantial Supervision to protect such individual from threats to health and safety due to Severe Cognitive Impairment.

We may allow other categories of individuals to be classified as Chronically Ill Individuals who have a level of disability similar (as determined under regulations prescribed by the Secretary of The Treasury in consultation with the Secretary of Health and Human Services) to the level of disability described in item # 1 above.
State law or state regulations as appropriate to a tax qualified policy may also be determinative of allowing other categories of individuals to be classifed as Chronically Ill Indivuduals.

**Community-Based Care Daily Benefit Amount** - The maximum We will pay for one day of covered Community-Based Care, as shown on Page 3, plus increases to this amount provided by the Annual 5% Compounded Benefit Inflation Provision.

Each day of covered care may include one or more of the policy benefits, but the maximum We will pay for any one day of Community-Based Care is the Community-Based Care Daily Benefit Amount.

**Nursing Facility Care Daily Benefit Amount** - The maximum We will pay for one day of covered Nursing Facility Care, as shown on Page 3, plus increases to this amount provided by the Annual 5% Compounded Benefit Inflation Provision.

Each day of covered care may include one or more of the policy benefits, but the maximum We will pay for any one day of Nursing Facility Care is the Nursing Facility Care Daily Benefit Amount.

**Elimination Period** - The number of days, as shown on Page 3, during which You are responsible for payment of the covered care You receive.

For Nursing Facility Care, a day counts toward the Elimination Period if both of the following conditions are met:

1. You are certified in writing by a Licensed Health Care Practitioner as having a Severe Cognitive Impairment or being unable to perform (without Substantial Assistance from another individual) at least 2 ADLs for a period of at least 90 days due to a loss of functional capacity; and
2. You incur an expense for a covered Qualified Long Term Care Service, except for Respite Care and Care Coordination (see Benefit Section).

For Community-Based Care, once You satisfy condition #1 above, each elapsed day will count toward the Elimination Period provided condition #2 is satisfied at least 1 day each Week. Benefits are only payable once your full Elimination Period has elapsed.

Any days satisfied towards the Elimination Period from a prior Loss will not have to be satisfied again. Any balance of unsatisfied days will be carried over into future policy years. Once You have completely satisfied the Elimination Period, it will not have to be satisfied again during the lifetime of Your policy.

The Elimination Period does not apply to Respite Care and Care Coordination.

**Hands-On Assistance** - Means the physical assistance of another person without which You would be unable to perform the ADL.

**Licensed Health Care Practitioner** - Any physician, as defined in section 1861(r)(1) of the Social Security Act, and any registered professional nurse, licensed social worker or other individual who meets such requirements as may be prescribed periodically by the Secretary of the Treasury or by state law or state regulations as appropriate to a tax qualified long term care insurance policy.

**Loss** - A covered expense under this policy, providing that benefit eligibility requirements are met and the Elimination Period, if applicable, is satisfied.

**Maintenance or Personal Care Services** - Means any care the primary purpose of which is the provision of needed assistance with any of the disabilities as a result of which the individual is a Chronically Ill Individual (including the protection from threats to health and safety due to Severe Cognitive Impairment).

**Medicare** - The Health Insurance for the Aged Act, Title XVIII of the Social Security Amendments of 1965 as then constituted or later amended, or Title I, Part I of Public Law 89-97, as enacted by the Eighty-Ninth Congress of the United States of America and popularly known as the Health Insurance for the Aged Act, as then constituted and any later amendments or substitutes thereof.

**Nursing Care** - Means custodial/personal care, intermediate nursing care or skilled nursing care which You receive in a Nursing Care Facility.

Custodial/personal care is care which is designed to provide personal assistance with the ADLs which You are able to perform only with human assistance, or which is required due to a Severe Cognitive Impairment.

Intermediate nursing care is technical nursing care which requires selected nursing procedures for which the degree of care and evaluation is less than that provided for skilled nursing care, but greater than that provided for custodial/personal care. This level of care provides a planned continuous program of nursing care which is preventive or rehabilitative in nature.

Skilled nursing care is care for an illness or injury which requires the training and skills of a licensed professional nurse, is prescribed by a physician, is necessary for Your condition or illness and is available on a 24-hour basis.



**Our Office** - The Travelers Home Office, One Tower Square, Hartford, Connecticut 06183, or any other office which We may choose for the purpose of administering this contract.

**Plan of Care** - A written document that a Licensed Health Care Practitioner prepares and signs specifying prescribed Qualified Long Term Care Services or treatment that is consistent with an assessment of Your status as a Chronically Ill Individual.

**Policy Maximum** - The total of all benefits payable under this policy. The Initial Policy Maximum, as shown on Page 3, will be adjusted by the Annual 5% Compounded Benefit Inflation Provision.

**Policy Year** - Each twelve month period beginning with the Policy Date, as shown on Page 3.

**Qualified Long Term Care Services** - Means necessary diagnostic, preventive, therapeutic, curing, treating, mitigating and rehabilitative services, and maintenance or personal care services, which: a) are required by a Chronically Ill Individual; and b) are provided pursuant to a written Plan of Care prescribed by a Licensed Health Care Practitioner.

**Severe Cognitive Impairment** - A loss or deterioration in intellectual capacity that is (a) comparable to (and includes) Alzheimer's disease and similar forms of irreversible dementia; and (b) measured by clinical evidence and standardized tests that reliably measure impairment in the individual's (i) short-term or long-term memory, (ii) orientation as to people, places or time, and (iii) deductive or abstract reasoning.

**Standby Assistance** - Means the presence of another person within arm's reach of You that is necessary to prevent, by physical intervention, injury to You while You are performing the ADL (such as being ready to catch You if You fall while getting into or out of the bathtub or shower as part of Bathing, or being ready to remove food from Your throat if You choke while Eating).

**Substantial Assistance** - Means Hands-On Assistance or Standby Assistance.

**Substantial Supervison** - Means continual supervision (which may include cuing by verbal prompting, gestures, or other demonstrations) by another person that is necessary to protect You from threats to Your health or safety (such as may result from wandering).

**Week** - Means any calendar week (Sunday through Saturday)

**We, Us, Our** - The Travelers Insurance Company.

**You, Your** - The Insured named on Page 3.

This Page is Left Blank Intentionally.





## SPECIAL POLICY FEATURES
## THE NEW YORK STATE PARTNERSHIP FOR LONG TERM CARE PROGRAM

**Policy Qualification** - This policy is qualified to participate in the New York State Partnership for Long Term Care Program. Extended Medicaid Coverage is provided under this program, as long as all of the requirements are met.

**Extended Medicaid Coverage** - Qualifying policies under the New York State Partnership for Long Term Care Program have the advantage of receiving Extended Coverage under the New York State Medicaid Program. This Extended Medicaid Coverage provides that individuals who have a qualified long term care policy and have received policy benefits which exhaust the "Bank of Days" (described below) will not be subject to the New York Medicaid "spend down" limits regarding assets. Be aware that other New York Medicaid eligibility requirements (such as New York state residency and income limits) will apply.

**"3 YEAR 'BANK OF DAYS'** - Eligibility for Extended Medicaid Coverage is based on the exhaustion of a "Bank of Days". When You purchase a qualified Partnership Policy, a 3-year "bank" of 1,095 days (365x3) is established regardless of the policy benefit period You select. For each day that policy benefits are paid for Nursing Facility Care, Alternate Care Status, Bed Reservation, Respite Care or Care Coordination, a full day is subtracted from this Bank of Days. For each day that policy benefits are paid for Home Health Care, Adult Day Care, or Assisted Living Care services, We will subtract 1/2 day from the Bank of Days. We will notify You when the balance of Your Bank of Days is between 90 and 180 days. At that time, You may want to consider applying for New York Medicaid. Once the Bank of Days is exhausted, You will be eligible for Extended Medicaid Coverage. Your eligibility for this Extended Medicaid Coverage will not be affected by any policy benefits that may still be payable after the exhaustion of the Bank of Days.

**Minimum Policy Standards** - This qualified policy exceeds the minimum policy standards established by the New York State Partnership for Long Term Care Program. This policy does not apply the special 180-day waiting period for Respite Care Benefits allowed by the Partnership Program; this policy also provides an annual maximum requirement of 20 days of Respite Care benefits (exceeding the minimum requirement of a 14 days annual maximum allowed by the partnership program). The enriched Respite Care benefits provided by this policy account for a premium impact of less than 2% of the premium cost of a policy without these enriched benefits.

The 1998 minimum standards for qualifying policies under the Partnership Program include a 100 day Elimination Period, $128 Daily Benefit Amount, and a 3-year Benefit Period for nursing home care/6-year Benefit Period for home and community-based care or any combination thereof. If you selected a 20-day or 60 day Elimination Period; and/or the Nonforfeiture Benefit Rider; and/or one of the higher Benefits Options (i.e., Increased or Standard), such a policy would exceed the minimum standards. Premiums for these enriched selected benefits do exceed 2% of premium for policies issued at the minimum standard levels. However, exceeding the minimum standard policy levels will not affect Your ability to qualify for Extended Medicaid Coverage under the Partnership Program.

**Nonforfeiture in Case of a National Long Term Care Program** - If a National Long Term Care Program is created through public funding, and this national program duplicates benefits provided by this policy, The Travelers Insurance Company will implement one or a combination of the following amendments to the policy, based on mutual agreement between the insurance commissioner of the State of New York and The Travelers:

1. A. Reduce premiums to the extent that benefits under this policy have been duplicated by the national program.

2. B. Increase benefits under this policy to make up for benefits which have been duplicated by the national program.

**Dispute Resolution** - In addition to any rights granted to You under the program, you may take legal action against Us relative to a claim denial as described in the provision below. Under this program, You may request arbitration before taking legal action to resolve a denied benefit authorization request only if You are notified by the Partnership that Your benefit authorization request might have been denied in error. Arbitration has the advantage of being a faster and less costly way to resolve disputed benefit authorization requests. The cost of all arbitration fees will be paid by Us. The arbiter selected to settle the dispute will be agreed upon by You and Us from a panel of independent neutrals.

The decision of the arbiter will be binding upon both You and Us.

If you elect to arbitrate, You waive the right to resort to a lawsuit insofar as the particular benefit authorization addressed by arbitration is concerned. Using arbitration will NOT detract from or supersede any rights You may have governing contesting claims, other than a denied benefit authorization request You elect to arbitrate, under regulations promulgated by the New York State Insurance Department or any such right You may have under the laws of New York State.



## QUALIFICATION FOR POLICY BENEFITS

This policy is intended to be a qualified long term care insurance contract as that term is defined in the Internal Revenue Code of 1986, as amended. Benefits paid are intended to be limited to covered Qualified Long Term Care Services for Chronically Ill Individuals. Any changes We make to ensure continued qualification of this policy for federal and state tax purposes will be offered to You for acceptance or rejection.

## BENEFITS FOR NURSING FACILITY CARE

**Nursing Facility Care** - Nursing Care received in a Nursing Care Facility, Alzheimer's Facility or Hospice Facility, as such terms are defined below.

A **Nursing Care Facility** must meet all of the following standards:

1. It is licensed as a Nursing Care Facility by the state in which it is located; or
2. It is either a freestanding facility or a distinct part of another facility such as a ward, wing, unit or swing-bed of a hospital or other facility;
3. It provides nursing care to individuals who are not able to care for themselves and who require nursing care;
4. Its primary function is to provide nursing care and room and board; and the facility charges for these services. The care must be performed under the direction of a licensed physician, or registered nurse (RN), or licensed practical nurse (LPN);
5. It may include care provided by a licensed physical, respiratory, occupational or speech therapist; and
6. It is not, other than in name only, an acute care hospital, a home for the aged, a retirement home, a rest home, a community living center, or a place mainly for the treatment of alcoholism, mental illness or drug abuse.

A facility meeting the requirements of a "nursing home' as defined in the New York State Public Health Law is deemed to meet the above standards.

**Alzheimer's Facility** - A Nursing Care Facility or a special unit within a Nursing Care Facility dedicated to caring for persons with Alzheimer's disease and related disorders.

**Hospice Facility** - A facility which provides a formal program of care for terminally ill patients provided on an in-patient basis and directed by a physician.

**Alternate Care Status** - If you are confined to a hospital, and a physician determines that You should receive covered Nursing Facility Care or covered Home Health Care Services, but You cannot access these services due to an inability to find available care, You will be considered to be in "Alternate Care Status." During the time You are in Alternate Care Status, You will be treated for the purpose of satisfying the Policy Elimination Period and receive policy benefits as if You were confined to a covered Nursing Care Facility.

202007100165

### Daily Benefit Amount

We will pay 100% of the Nursing Facility Care expenses incurred, to the extent such care constitutes Qualified Long Term Care Services, up to the Nursing Facility Care Daily Benefit Amount, including care delivered while You are in Alternate Care Status, for each day You are confined overnight in a Nursing Care Facility, Alzheimer's Facility or Hospice Facility.

### Eligibility For The Payment Of Nursing Facility Care Benefits

We will pay the Benefits for Nursing Facility Care upon written certification by a Licensed Health Care Practitioner in a written Plan of Care that You are a Chronically Ill Individual as defined on Page 4 of the Policy. Such Nursing Facility Care must be delivered pursuant to the written Plan of Care.

Benefits are not payable during the Elimination Period or if the Policy Maximum has been reached. Benefits paid for Nursing Facility Care will be counted against the Policy Maximum.

## BENEFITS FOR BED RESERVATION

**Bed Reservation** - We will pay benefits to reserve Your room/bed in a Nursing Care Facility, Alzheimer's Facility or Hospice Facility while You are temporarily absent for any reason and You are being charged for Your room/bed.

### Daily Benefit Amount

We will pay 100% of the Bed Reservation Benefit expenses incurred, up to the Nursing Facility Care Daily Benefit Amount, for each day You are eligible for Bed Reservation Benefits.

### Bed Reservation Annual Maximum Benefit Amount

The maximum amount payable for Bed Reservation Benefits in any Policy Year is 20 times the Nursing Facility Care Daily Benefit Amount. Unused benefits cannot be carried over into the next Policy Year. Bed Reservation Benefits may be payable more than once during a Policy Year, up to the Bed Reservation Annual Maximum Benefit Amount.

### Eligibility For The Payment Of Bed Reservation Benefits

To receive Bed Reservation Benefits, You must satisfy the Elimination Period, be receiving covered Nursing Facility Care Benefits immediately before Your absence, be away overnight and return to a covered Nursing Care Facility. Days on which Bed Reservation services are received will count toward satisfying the Elimination Period, up to a maximum of 20 days.

Benefits are not payable during the Elimination Period, if the Policy Maximum has been reached, or if the Bed Reservation Annual Maximum Benefit Amount, as shown above, has been reached. Benefits paid for Bed Reservation will be counted against the Policy Maximum.





## BENEFITS FOR COMMUNITY-BASED CARE

**Community-Based Care** - Home Health Care received in Your Home or Adult Day Care received at an Adult Day Care Center, as such terms are defined below.

### HOME HEALTH CARE

**Home Health Care Services include any one of the following:**

1. Nursing Care provided by a licensed nurse (RN, LPN or LVN).
2. Care provided by a licensed physical therapist.
3. Care provided by a licensed respiratory therapist.
4. Care provided by a licensed occupational therapist.
5. Care provided by a licensed speech therapist.
6. Nutrition counseling provided by or under the supervision of a licensed dietitian.
7. Services of a licensed home health care agency, if licensing is required by the state, to provide:

a) Home health aide services (including services of a home health aide where Human Assistance is required to aid You in necessary travel, such as travel to and from a physician's office); or

b) Home hospice services; or

c) Homemaker services, including meal preparation, personal laundry services, light housekeeping and grocery shopping, provided that these services are prescribed in Your written Plan of Care and are performed by any of the individuals described above. Such services must be performed during the same visit in which the individual is primarily providing custodial/personal care.

Services described in Items # 7a, b or c are considered to be one service.

Services of a licensed or certified home health aide who does not report through a licensed or certified home health agency will be covered as long as the following conditions are met: 1) You must utilize the Care Coordination Benefit as described in Your policy; and 2) The Licensed Health Care Practitioner develops a written Plan of Care certifying the need for care, and arranges for and approves the necessary services of a certified home health aide.

**Home** - Any place where You reside. Home is not a Nursing Care Facility, Assisted Care Living Facility, Alzheimer's Facility, Hospice Facility or hospital.

### Home Health Care Daily Benefit Amount

We will pay 100% of the Home Health Care expenses incurred, to the extent such care constitutes Qualified Long Term Care Services, for each day You receive covered Home Health Care services, up to the Community-Based Care Daily Benefit Amount.

FILED: ... COUNTY CLERK 07/09/2020 02:50 PM 2020V0001165
NYSCEF DOC. NO. 2
Index #: E2020004474 INDEX NO. E2020004474
RECEIVED NYSCEF: 07/0

**ADULT DAY CARE**

**Adult Day Care** - A program for six or more individuals, of social and health-related services provided during the day in a community group setting for the purpose of supporting frail, impaired elderly or other disabled adults who can benefit from care in a group setting outside the home.

**Adult Day Care Center** - A facility which provides a program of Adult Day Care and is established and operated in accordance with any applicable state or local laws including any laws requiring licensing.

**Adult Day Care Daily Benefit Amount**

We will pay 100% of the Adult Day Care expenses incurred, to the extent such care constitutes Qualified Long Term Care Services, for each day You receive covered Adult Day Care services in an Adult Day Care Center, up to the Community-Based Care Daily Benefit Amount.

**ASSISTED LIVING CARE**

**Assisted Living Care** - Care received by You when You reside in an Assisted Care Living Facility.

**Assisted Care Living Facility** - (Also may be referred to as a Board and Care Home, Adult Foster Care Facility, Personal Care Home, Domiciliary Care Home, Residential Care Home or Congregate Care Facility). This facility is engaged primarily in providing ongoing care and related services and such facilities are licensed and/or certified by the Department of Health or by agencies exempt from licensure or certification in accordance with Article 28 and/or 36 of the Public Health Law or Section 505.14 of the Social Services Law and regulations promulgated thereunder.

Payment for Assisted Living Care services received outside of New York State is limited to services rendered by a facility licensed to provide such services in the jurisdiction where the services were rendered.

**Daily Benefit Amount**

We will pay 100% of the Assisted Living Care expenses incurred (including room and board) up to the Daily Benefit Amount for Community-Based Care.

**Eligibility For The Payment Of Community-Based Care Benefits**

We will pay the Benefits for Community-Based Care upon written certification by a Licensed Health Care Practitioner in a written Plan of Care that You are a Chronically Ill Individual as defined on Page 4 of the Policy. Such Community-Based Care must be delivered pursuant to the written Plan of Care.

Benefits are not payable during the Elimination Period or if the Policy Maximum has been reached. Benefits paid for Community-Based Care will be counted against the Policy Maximum.



**BENEFITS FOR RESPITE CARE**

**Respite Care** - Relief for Your primary caregiver(s) that may result in overnight stays for You in a Nursing Care Facility, Assisted Care Living Facility, Alzheimer's Facility or Hospice Facility. Respite Care also includes covered Community-Based Care services received by You in order to relieve Your primary caregiver(s).

**Elimination Period**

Respite Care Benefits will not be payable for any day on which You are receiving other benefits under this policy. Respite Care Benefits will not be subject to the Elimination Period. Days for which Respite Care Benefits are received will not count toward satisfying the Elimination Period. Premiums will not be waived when only this benefit is being paid.

**Respite Care Daily Benefit Amount**

We will pay the Nursing Facility Care Daily Benefit Amount for each day Respite Care is received either in a Community-Based setting or in a Nursing Care Facility.

**Respite Care Annual Maximum Benefit Amount**

The maximum amount payable for Respite Care Benefits in any Policy Year is 20 times the Nursing Facility Care Daily Benefit Amount. Unused benefits cannot be carried over into the next Policy Year. Respite Care Benefits may be payable more than once during a Policy Year, up to the Respite Care Annual Maximum Benefit Amount.

**Eligibility For The Payment of Respite Care Benefits**

We will pay the Benefits for Respite Care upon written certification by a Licensed Health Care Practitioner in a written Plan of Care that You are a Chronically Ill Individual as defined on Page 4 of the Policy. Such Respite Care must be delivered pursuant to the written Plan of Care.

Benefits are not payable if the Policy Maximum or Respite Care Annual Maximum Benefit Amount, as shown above, has been reached. Benefits paid for Respite Care will be counted against the Policy Maximum.

**BENEFITS FOR CARE COORDINATION**

**Care Coordination** -The service provided by a Licensed Health Care Practitioner that You may select, which involves assessing the need for care, creating and implementing a written Plan of Care, where applicable, and periodically reviewing the written Plan of Care.

**Elimination Period**

Care Coordination Benefits will not be subject to the Elimination Period or the Nursing Facility Care Daily Benefit Amount or Community-Based Care Daily Benefit Amount limits. Premiums will not be waived when only this benefit is being paid. Days for which Care Coordination Benefits are received will not count toward satisfying the Elimination Period.

## Benefit Amount

We will pay 100% of the Care Coordination and associated expenses incurred, up to the Care Coordination Annual Maximum Benefit Amount. These expenses may include: 1) initial assessment of the patient; 2) developing a written Plan of Care; 3) coordinating caregiving services and/or facilities to implement the written Plan of Care; 4) ongoing periodic assessments; and 5) changes to the written Plan of Care.

## Care Coordination Annual Maximum Benefit Amount

The maximum amount payable for Care Coordination benefits in any Policy Year is 2 times the Nursing Facility Care Daily Benefit Amount. Unused benefits cannot be carried over into the next Policy Year.
Care Coordination Benefits may be payable more than once during a Policy Year, up to the Care Coordination Annual Maximum Benefit Amount.

## Eligibility For The Payment Of Care Coordination Benefits

We will pay the Benefits for Care Coordination upon written certification by a Licensed Health Care Practitioner that You are a Chronically Ill Individual as defined on Page 4 of the Policy.

Benefits are not payable prior to written certification by a licensed Health Care Practitioner that You are a Chronically Ill Individual, or if the Policy Maximum or Care Coordination Annual Maximum Benefit Amount has been reached. Benefits paid for Care Coordination will be counted against the Policy Maximum.

## BENEFITS FOR ALTERNATE PLAN OF CARE

**Alternate Plan of Care** - If You would otherwise require a Nursing Care Facility stay under a written Plan of Care, We may pay for alternate services, devices or types of care under a written Alternate Plan of Care agreement, if such plan is medically acceptable. This Alternate Plan of Care agreement is subject to the following conditions: 1) it must be developed by or with Licensed Health Care Practitioners; and 2) it must be agreed to, in writing, by You, Your physician and Us. In addition, the only services under such Alternate Plan of Care for which benefits may be payable under this policy are for Qualified Long Term Care Services.

At a minimum, any Alternate Plan of Care agreement will address the following items: Elimination Period, Waiver of Premium, benefit levels and maximum benefits available. We are not obligated to provide benefits for services received prior to such written agreement, as described above.

Agreement to participate in an Alternate Plan of Care will not waive any of Your or Our rights under the policy.

Benefits payable under the Alternate Plan of Care provision will be counted against the Policy Maximum. The use of benefits under the Alternate Plan of Care benefit may reduce your policy maximum to a level below that required to provide the minimum benefits required by the New York State Partnership for Extended Medicaid Coverage. If this occurs, you may lose your eligibility for Extended Medicaid Coverage.

The Alternate Plan of Care agreement may specify special treatments, or different sites or levels of care. Some of the services You may receive may differ from those otherwise covered by Your policy. In this case, benefits will be paid at the levels specified and agreed to in the written Alternate Plan of Care agreement.



## POLICY EXCLUSIONS

We will not pay benefits under this policy for any portion of an expense which is:

1. For care or treatment for which no charge is normally made; or
2. For services provided by a member of Your immediate family unless: (a) the member of Your immediate family is a regular employee of the organization which is providing the services; (b) the organization receives the payment for the services; and (c) the member of Your immediate family receives no compensation other than the normal compensation for employees in his or her job category; or
3. For care or treatment received outside the United States or its territories; or
4. Caused by any attempt at suicide or an intentionally self-inflicted injury within the first 2 years: (a) from the issue date of this policy; (b) from the effective date of any underwritten increase (only pertains to the additional coverage); or (c) from the effective date of Reinstatement; or
5. Caused by declared or undeclared war or any act thereof; or
6. Paid under any federal, state or other governmental health care plan or law, except Medicaid, unless otherwise required by law to do so (We will not pay benefits for expenses for services or items to the extent that such expenses are reimbursed under Medicare or would be so reimbursed but for the application of a deductible or coinsurance requirement); or
7. For care or treatment resulting from alcoholism or drug addiction.

**This Page is Left Blank Intentionally.**



## GENERAL PROVISIONS

**Entire Contract** - The entire contract between You and Us consists of the policy, all attached pages, and the written application. All statements made in the application are considered to be to the best of Your knowledge and belief.

**Policy Changes** - No change in this policy shall be valid until approved by one of Our officers and unless that approval is endorsed on or attached to the policy. No person, other than one of Our officers, can alter or waive any terms or provisions of this policy.

**Benefit Changes** - At any time, You have the right to increase or decrease Your Nursing Facility Care Daily Benefit Amount or Community-Based Care Daily Benefit Amount. In the event of an increase, Our medical underwriting standards in effect at the time of the increase will apply.

**Certification** - In order to continue to qualify for the benefits described in this Policy, We will periodically (at least annually and no more frequently than monthly) require recertification of Your status as a Chronically Ill Individual.

**Contest** - For a policy that has been inforce for less than six months, We may rescind a long term care insurance policy upon a showing of misrepresentation that is material to the acceptance for coverage.

For a policy that has been inforce for at least six months, but less than two years, We may rescind a long term care insurance policy upon a showing of misrepresentation that is both material to the acceptance for coverage and which pertains to the condition for which benefits are sought.

For a policy that has been inforce for two years, We may rescind a long term care insurance policy only upon a showing of fraudulent misrepresentation.

**Notice of Claims** - We must receive written notice of claim at Our Office within 60 days after any covered Loss occurs or begins. If notice cannot be given at that time, it must be given as soon as reasonably possible. When We get the notice, We will send out forms for filing proof of Loss. If We do not send the forms within 15 days after receiving written notice, Our requirements will be met if We receive written proof of the event and type and extent of the Loss within the time stated below.

**Proof of Loss** - We must receive proof of Loss within 90 days after the date the Loss began or occurred. If it is not reasonably possible to give this timely proof, the claim will not be affected if it is sent as soon as is reasonable. Unless the person making the claim is legally incapacitated, proof must be given within one year from the time it is otherwise due.

We may require proof of Loss when benefits are being paid, but not more often than once every 31 days.

**Right to Examine** - In evaluating a claim, We reserve the right to examine You, at Our expense, when and as often as We think reasonable. This examination may be in the form of an assessment by a Licensed Health Care Practitioner of Your status as a Chronically Ill Individual.

**Payment of Claims** - We will, on receiving proof of a covered Loss pay You the benefits due. For continuing Losses, We will pay the benefits monthly upon receipt of due proofs of Loss. Any accrued benefits unpaid at Your death will be paid to Your estate or to any health care providers to whom You have assigned benefits.

**Payments** - All benefit payments We make will be paid from Our Office.

**Legal Actions** - If, in Your opinion, We have failed to pay the benefits provided by this policy, You may bring action to recover on this policy after 60 days from the date the proof of Loss has been given. However, no action may be brought against Us after more than three years from the date proof of loss

should ha ve been furnished. For further details on the arbitration process available to You, please refer to Page 9. If you should decide to litigate, both You and We may use information made available through the arbitration process.

**Review and Appeal Procedures** - If You believe that Our claim decision is in error, We will reconsider Your claim if You submit a written request explaining why You feel We should change Our decision. You may authorize someone else to act for You in this appeal process.

Your request should include the names, addresses and phone numbers of the providers who You think We should contact to learn more about Your health and the care You received.

Once We complete Our review of Your claim, We will notify You of Our decision in writing within 60 days.

In addition to these review and appeal procedures, You have other procedures available under the New York Partnership Program. See Page 9 for details.

**Premium Payment** - The first premium payment is due in full within 30 days after the Policy Date. Premiums may be paid annually, semi-annually or for any other period agreed upon by You and Us. Premiums must be paid on or before the date they are due or during the grace period. Premiums must be paid to Us at Our Office or to one of Our authorized representatives. Renewal premiums will be due on the day after the end of each term for which premiums have been paid.

If you designate a third party to receive late payment due notices and that third party pays the premium, We will apply the third party payment to Your policy.

If You die while insured under this policy, We will refund any unearned pro rata portion of Your premium paid. This amount will be paid to Your estate within 30 days after We receive written notice of Your death.

**Premium Change** - On each due date, the premium will be based on Your age and classification when the contract was issued, and the table of rates in effect on that due date for this policy. We will notify You at least 30 days in advance of any change in the premium due caused by a change in the table of rates.

**Waiver of Premium** - If You are receiving benefits other than Respite Care or Care Coordination, We will waive premiums. Premiums will be waived beginning the day Your benefits are payable and ending when benefits are no longer payable.

If Your premium has already been paid for any period during which Premium Waiver is in effect, We will refund the premium for that pro rata period on a monthly basis.

If You go off claim (i.e. when benefits are no longer payable), You will be charged an interim premium to cover the period between when the Premium Waiver period ends and the due date of Your next regularly scheduled bill.

**Cancellation - After the First 30 Days** - You may cancel this policy after the first 30 days by sending Us written notice. We will cancel the policy as of the date We receive Your notice in Our Office. We will refund any unearned portion of Your premium paid within 30 days.

**Grace Period** - We allow a 31-day grace period after the due date for payment of any premium. During this period, this policy will be in full effect. If any premium is not paid by the end of the grace period, this policy will end, as of the unpaid premium due date, subject to any applicable nonforfeiture benefits.

If You have designated a third party to receive late payment due notices, the 31-day Grace Period will commence with the release of such notice. During this period, this policy will be in full effect. If any



premium is not paid by the end of this grace period, this policy will end as of the unpaid premium due date, subject to any applicable nonforfeitiure benefits.

**Reinstatement** - If any premium is not paid within the Grace Period, We may, at Our option, accept payment of premium without requiring an application for reinstatement. The policy will be restored as of the date We accept the premium payment. If We require an application and give a conditional receipt for the premium, the policy will be restored on the date We approve Your application. Lacking such approval, the policy will be restored on the 45th day after the date of the conditional receipt unless before then We have notified You in writing of Our disapproval.

Your restored policy will provide You the same benefits that You had before You failed to pay premium. You have the same rights that You had before You failed to pay premium, subject to any rider attached to or any endorsement made on this contract at the time it is restored.

**Extended Grace Period Due to Chronic Illness** - If You or Your legal representative can provide written certification by a Health Care Practitioner that a Severe Cognitive Impairment or Loss of Functional Capacity existed at the time a premium was due, which resulted in Your missing the payment, You may reinstate Your policy without evidence of insurability. You must simply apply for reinstatement and pay any back premium due. You will be allowed to exercise this right for up to 180 days from the premium due date.

**Assignment** - Any benefit provided by this policy is transferrable by assignment. No assignment is binding on Us until We receive a copy of the written assignment at Our Office. We will not determine if an assignment is valid.

**Misstatement of Age** - If Your date of birth or age was misstated in the application, all benefits are what the premium paid would have purchased at the correct age.

If, according to the correct age, We would not have issued the policy, We will not pay any benefits and will refund all premiums paid.

Proof of age may be filed at any time at Our Office. Age means age at last birthday.

**Extension of Benefits** - Termination of long term care insurance shall be without prejudice to any benefits payable under the policy if eligibility for such benefits or total disability began while the long term care insurance was in force and continues without interruption after termination.

Such extension of benefits beyond the period the long term care insurance was in force may be limited to the duration of the benefit period, if any, or to payment of the maximum benefits and may be subject to any policy elimination period and all other applicable provisions of the policy.

**Non-Participating** - This policy will not share in Our surplus earnings.

**Termination** - Except as stated in the "Premium Payment" and "Reinstatement" provisions, We will not terminate this policy until the Policy Maximum, including any increases due to the Annual 5% Compounded Benefit Inflation Provision, has been reached.

**This Page is Left Blank Intentionally.**





## ANNUAL 5% COMPOUNDED BENEFIT INFLATION PROVISION

This Provision is made a part of the policy to which it is attached. All provisions of the policy consistent with this Provision apply to it.

**Benefit** - We will increase the Nursing Facility Care Daily Benefit Amount by 5 % on a compounded basis on each anniversary of the Policy Date.

The new Nursing Facility Care Daily Benefit Amount will be calculated as follows:

1. Multiply the Nursing Facility Care Daily Benefit Amount, including any previous benefit increases, on the current anniversary by 5 %.

2. Round this amount to the nearest dollar.

3. Add this amount to the Nursing Facility Care Daily Benefit Amount to determine the increased Nursing Facility Care Daily Benefit Amount.

When the Nursing Facility Care Daily Benefit Amount is increased as a result of this Provision, the Community-Based Care Daily Benefit Amount will also be increased to maintain the proportional relationship between the Nursing Facility Care Daily Benefit Amount and the Community-Based Care Daily Benefit Amount as shown on Page 3. The Policy Maximum, as reduced by past claims paid, will be increased by 5% and rounded to the nearest dollar to determine the new Policy Maximum.

Premiums for this Provision are expected to remain constant and may change on a class basis only.

**Termination** - This Provision will terminate on the earliest of:

1. termination of the policy; or

2. failure to pay any premium due for the policy; or

3. the date the Policy Maximum, including any increases under this Provision, is reached.

This Provision shall not otherwise vary, alter or extend the terms of the policy.

THE TRAVELERS INSURANCE COMPANY

President

**SUPPLEMENT TO APPLICATION FOR LIFE/HEALTH INSURANCE
TO THE TRAVELERS INSURANCE COMPANIES, HARTFORD, CONNECTICUT**

**For Home Office Use Only**

| PROPOSED INSURED | APPLICATION NO. | CONTRACT NO. |
|---|---|---|
| MARTHA A JACKLING | 1131239 | LC4-176400 A GO |

The following corrections, additions or changes are made in the application described above:

I HAVE NOT HAD ANY INJURY OR ILLNESS AND HAVE NOT CONSULTED, BEEN EXAMINED OR TREATED BY A PHYSICIAN OR PRACTITIONER BECAUSE OF ANY CHANGE IN MY PHYSICAL OR MENTAL HEALTH SINCE THE DATE OF

PART ONE APPLICATION DATED OCTOBER 21, 1999.

THE FIRST PREMIUM IS NOW PAID WHILE I AM IN GOOD HEALTH.

Applicant agrees and understands that the above corrections, additions or changes,

1. Will be incorporated in and part of the application described above; and
2. Will have the same effect as if made by the Applicant in such application; and
3. Will be subject, in all respects, to the agreements made in such application.

This Supplement, signed by the Applicant before delivery of the above-numbered contract, was attached to and made a part of such contract on its Date of Issue. The Proposed Insured will be the Applicant, unless otherwise indicated below.

DATED____________ 19___ AT________________ PROPOSED INSURED ______________________
(City or Town, State) (Signature in full)

WITNESSED BY ________________________ APPLICANT ______________________
(Signature of Applicant if other than Proposed Insured)

Travelers Life & Annuity
A Member of Travelers Group

**LC4 TRANSITION FORM (New York Partnership)**

**The Travelers Insurance Company**
**One Tower Square - New Business Department - 4MS**
**Hartford, CT 06183-6094**
**Fax# (860) 277-8124**

**Insured's Name:** Martha (First) A. (Middle) Jackling (Last)
**Insured's Social Security #:** REDACTED

**TO BE COMPLETED BY THE AUTHORIZED TRAVELERS REPRESENTATIVE**

**Change Reason (Check one)**

- ☐ Reissue of an, LC3-NY to a LC4 policy: Existing policy # ____________ (within 60 days of LC4 availability).
- ☐ Switch to an LC4 policy from a LC3-NY policy (application is currently in underwriting)
- ☒ New LC4 application (LC4 product is available, however, the LC4 application is not yet approved). Use this form to accompany an LC3 application and the LC3 required forms until the LC4 application is approved in your state.
- ☐ Other ____________

| DAILY BENEFIT AMOUNT | BENEFIT PERIOD | ELIMINATION / WAITING PERIOD | BENEFIT PLANS (*Must choose one*) | OPTION |
|---|---|---|---|---|
| $ 140 — | ☒ 3 years | ☒ 20 days | Comprehensive Care Check one: | ☐ Nonforfeiture Option |
| Maximum $300 | ☐ 5 years | ☐ 60 days | ☐ Standard Benefit (SB) *(available with 5 yr, 6 yr or Unlimited)* | |
| $10 increments | ☐ 6 years<br>☐ Unlimited | ☐ 100 days | ☒ Reduced Benefit (RB) *(available with all Benefit Periods)* | |
| Minimum $128 (1998) | | | ☐ Increased Benefit (IB) *(available with 6 yr or Unlimited)* | |

**PAYMENT INFORMATION**

| | Annual | Semi-Annual | Quarterly | Monthly |
|---|---|---|---|---|
| ☒ Regular (Direct) | ☒ | ☐ | ☐ | N/A |
| ☐ Automatic Premium Check (APC/PAC) | N/A | N/A | N/A | ☐ |

Does Sponsored-Group Discount apply ☐ YES ☒ NO
If YES, list group name: ____________ Code Number: ____________
Estimated LC4 Annual Premium: $ 1556.80 Estimated LC4 Modal Premium: $ 1556.80

Amount submitted with original application: $ ∅ (Initial Modal Premium is required if paying APC/PAC)

Married applicants are eligible for a premium discount. An additional discount may be available if the applicant's spouse applies for and is issued a Travelers Long Term Care Policy.
If married, please provide spouse's Social Security number here: REDACTED
Does the applicant's spouse currently have a Travelers Long Term Care Policy or is the spouse applying for one at this time? ☒ YES ☐ NO
If YES, spouse's full name: William T. Jackling
**(Please note: if spouse is applying for an LC4 Policy, a separate LC4 Transition Form is required)**

***I hereby declare that I understand the nature of the changes requested above and that the LC4 policy may have benefits that are different than the policy I originally applied for. I have received a LC4 Outline of Coverage and Graphic Comparison.***

**Signature of Applicant or Insured:** X Martha A. Jackling **Date Signed:** 10-21-99
**Authorized Travelers Representative Signature:** Peter Moore

***(Requests not valid without signature and date)***

## APPLICATION FOR LONG TERM CARE INSURANCE
THE TRAVELERS INSURANCE COMPANY, ONE TOWER SQUARE, HARTFORD, CONNECTICUT 06183

| | | | | |
|---|---|---|---|---|
| 1. Proposed Owner/Insured's Name<br>Martha A. Jackling | | | Sex ☐ Male [X] Female | Marital Status<br>M |
| Date of Birth<br>3/11/36 | Place of Birth<br>CT | Social Security Number<br>REDACTED | If Married, Spouse Applying? | YES [X]<br>NO ☐ |
| 2. Residence Address (No., Street, City, State, Zip Code)<br>11 Old Brook Trail<br>Honeoye Falls NY 14472 | | | Home Phone<br>(716) 624-1513 | Best time to call<br>A.M. [circled]<br>P.M. |
| 3. Billing Address *(if different from residence address)* | | | Business Phone<br>( ) - | Best time to call<br>A.M.<br>P.M. |

**4. Name and address of person to be notified in the event of nonpayment of premium.**

| | | | |
|---|---|---|---|
| 1. Are you eligible for benefits under Medicaid? (Not Medicare) | | | ☐ YES [X] NO |
| 2. Are you receiving Disability Income, Workers' Compensation or Social Security Disability benefits? | | | ☐ YES [X] NO |
| 3. Do you have any accident and health [circled] or long term care coverage inforce? | | | [X] YES ☐ NO |
| *If YES, Company Name*<br>TriCare Fed. Govt, US Benefit Service | *Policy Number* | *Daily Benefit* | |
| 4. Will this Travelers policy replace existing coverage listed in question 3 above? | | | ☐ YES [X] NO |
| *If YES, CompanyName and Type of Coverage* | Policy Number | | |
| *(If replacing a current long term care policy, a replacement form may be necessary.)* | | | |
| 5. Have you ever had life or health insurance refused, rated, ridered, cancelled or modified? | | | ☐ YES [X] NO |

Please provide details to questions 1-5 below.

**If you already have long term care coverage which is not being replaced by this policy or are eligible for benefits under Medicaid, you probably should not apply for this coverage.**

**MEDICAL HISTORY, Part 3** Questions must be answered by the proposed insured.

1. Have you ever had or been diagnosed or been treated for any of the following:

YES NO [partly cut off] YES NO [partly cut off]

REDACTED

2.

3.

4.

If

5. Have you ever had, been diagnosed or treated for any of the following:

a
b REDACTED

c

d
e

f

6.
7.
8.
9.

If yo
cond
5

| | |
|---|---|
| Please indicate your Primary Physician: | Name Jules ZysMAN Telephone Number 624-2121<br>Address 23 Ontario St., Honeoye Falls NY<br>Date last seen 10/99 Reason for visit Annual ck up |

Medications: Please list prescription medications you are taking. *(Name of medication, dose and frequency taken.)*

REDACTED

**I understand that failure to reveal complete information about existing health conditions may make my policy, if issued, null and void.**

[redacted]

REDACTED

REDACTED

**AUTHORIZATION TO OBTAIN AND DISCLOSE INFORMATION:**

I authorize The Travelers Insurance Company (referred to as The Travelers), its Reinsurers, insurance support organizations and their authorized representatives to obtain medical and other information in order to evaluate my (our) application for insurance. I authorize my physician, medical practitioner, hospital, clinic, other medical or medically related facility, insurance company, the Medical Information Bureau, Inc., employer, consumer reporting agency, or other organization, institution or person having information available as to employment, other insurance coverage, medical care, treatment, supplies or advice with respect to me to furnish such information to The Travelers, its Reinsurers, or their authorized representatives.

This authorization will be valid from the date signed for a period of 2½ years. I agree that a photographic copy of this authorization is as valid as the original. Information given in my application, including health care information, may be made available without my prior authorization to other insurance companies to which I make application for life or health insurance coverage or to which a claim is submitted.

I hereby authorize preparation of an investigative consumer report.

I have read this authorization and understand that I have a right to receive a copy. I acknowledge receipt of the notices regarding:

- "Notification Regarding Use and Release of Medical Information to the Medical Information Bureau, Inc., and Other Life Insurance Companies"
- "The Fair Credit Reporting Act"
- "Medicare Supplement Buyer's Guide"
- "Disclosure Statement" or "Outline of Coverage"
- "Consumer Participation Agreement"

**DECLARATION:**

I declare that all statements and answers in this application (Parts 1, 2, 3 and 4) are complete and true to the best of my knowledge and belief. I understand and agree that, except as provided in the Conditional Coverage Receipt (which bears the same number and date as this application), if that receipt is issued for money which is paid with this application, no coverage will take effect until (a) the Contract, Provision or Rider is delivered to me; and (b) the Initial Term Premium is paid in full; provided that all health and other conditions relating to insurability as described in this application are unchanged.

I have paid to ______________ the sum of ______________ and hold a receipt bearing the number imprinted hereon.

Witnessed by Peter Moore  x Martha G. Jackling (Signature of Proposed Insured)

Dated On 10-21-99 (Month/Day/Year)  Honeoye Falls NY (City, State)

**CAUTION:**

**If your answers on this application fail to include all material medical information requested, The Travelers has the right to deny benefits or rescind your policy.**

A-7322

MONROE COUNTY CLERK'S OFFICE

THIS IS NOT A BILL. THIS IS YOUR RECEIPT.

Receipt # 2446528

Book Page CIVIL

No. Pages: 13

Instrument: COMPLAINT

Control #: 202007270887
Index #: E2020004474

Date: 07/27/2020

Time: 2:07:03 PM

Return To:
DAVID SCOTT STERN
One East Main Street
Rochester, NY 14614

Jackling, William T

Brighthouse Life Insurance Company
Travelers
Metlife
Genworth
Brighthouse Financial

Total Fees Paid: $0.00

Employee:

State of New York

MONROE COUNTY CLERK'S OFFICE
WARNING – THIS SHEET CONSTITUTES THE CLERKS ENDORSEMENT, REQUIRED BY SECTION 317-a(5) & SECTION 319 OF THE REAL PROPERTY LAW OF THE STATE OF NEW YORK. DO NOT DETACH OR REMOVE.

JAMIE ROMEO

MONROE COUNTY CLERK

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF MONROE**

-----------------------------------------X

WILLIAM T. JACKLING,
as Executor of the Estate of ,
Martha A. Jackling,

Index No. #: **E2020004474**
Date of Filing: 7/9/2020

**Plaintiff,**

**COMPLAINT**

-vs-

BRIGHTHOUSE LIFE INSURANCE COMPANY, TRAVELERS, METLIFE, GENWORTH, BRIGHTHOUSE FINANCIAL,

**Defendants**

-----------------------------------------X

Plaintiff, WILLIAM T. JACKLING, as Executor of the Estate of Martha A. Jackling, by and through his attorneys, ELLIOTT STERN CALABRESE, LLP, David S. Stern, Esq., of counsel, complaining of the defendants, BRIGHTHOUSE LIFE INSURANCE COMPANY, TRAVELERS, METLIFE, GENWORTH, BRIGHTHOUSE FINANCIAL, sets forth upon information and belief:

1. That Plaintiff/decedent is a policyholder of a Long-Term Care Insurance Policy ("Policy") purchased from Defendants. Plaintiff timely filed claims for reimbursement pursuant to the Policy but Defendants failed to properly reimburse her claims, failing to reimburse for more days than the contractual elimination period, denying payment for some claims that should have been paid, and paying claims at a

rate lower than the contractual amount. Plaintiff initiates this to receive the proper benefits of her Policy.

2. Furthermore, Plaintiff contends that Defendants fraudulently sold the Policy to Plaintiff knowing it would not pay the contractual benefits.

**PARTIES**

3. That at all times mentioned herein, Plaintiff, WILLIAM T. JACKLING, is the Executor of the Estate of his late spouse, Martha A. Jackling, and he is an individual and was a resident of the State of New York, currently residing 11 Old Brook Trail, Honeoye Falls, New York 14472

4. That at all times mentioned herein, Defendant, BRIGHTHOUSE LIFE INSURANCE COMPANY, is a foreign corporation doing business in New York with its principal offices located at 11225 North Community House Road, Charlotte, North Carolina 28277-4208.

5. That at all times mentioned herein, Defendant, TRAVELERS, is a foreign corporation doing business in New York with its principal offices located at One Tower Square, Hartford, CT 06183-6094.

6. That at all times mentioned herein, Defendant, METLIFE, is a foreign corporation doing business in New York with its principal offices located at One Tower Square, Hartford, CT 06183-6094.

7. That at all times mentioned herein, Defendant, GENWORTH, is a foreign corporation doing business in New York with its principal offices located at 3100 Albert Lankford Drive, Lynchburg, VA 24501-5822.

8. That at all times mentioned herein, Defendant, BRIGHTHOUSE FINANCIAL, is a foreign corporation doing business in New York with its principal offices located at 11225 North Community House Road, Charlotte, North Carolina 28277-4208.

## JURISDICTION AND VENUE

The Court has jurisdiction of this action pursuant to Judiciary Law A§ 140-b.

Venue is proper in this Court pursuant to *CPLR 503* as Plaintiff resides in the County of Monroe.

## THE POLICY AND PLAINTIFF'S CLAIMS PURSUANT TO THE POLICY

9. Plaintiff purchased a Long-Term Care Insurance Policy, Policy Number LC4176400.

10. Pursuant to the Policy, a claim was initiated for Plaintiff for dates of service from September 30, 2000 to May 18, 2014.

11. The claim was approved by Defendants.

12. The Policy contains a 20-day elimination period.

13. Upon information and belief, Defendants failed to pay for more than 20 days even though the elimination period was only 20 days.

14. The Policy terms are that Defendants are to pay Plaintiff between $75.00 and $167.00 per day for each covered day.

15. Upon information and belief, Defendants failed to pay the full amount for at least some of the covered days.

16. Plaintiff repeatedly notified Defendants of these issues, but Defendants failed and refused to abide by their payment obligations as required under the policy.

17. Upon information and belief, Defendants owe Plaintiff at least $212,900.00.

18. Plaintiff should be entitled to interest on all amounts owed.

19. Because of Defendants refusal and failure to pay for the care expenses of Plaintiff, Plaintiff was required to sell assets totaling $1,300,000.00.

20. The policy issued in 1999 was a total asset protection policy.

21. The policy was intended to comply with the provisions of Public Health Law § 3602, known as the New York Partnership for Long Term Care Statute.

22. The intent of the policy was to protect personal assets of the insured by avoiding the Medicaid spend-down requirements in the event that insurance benefits were exhausted.

23. On a date presently unknown to the Plaintiff, but prior to January 10, 2014, Defendant MetLife of Connecticut took over the obligations of Travelers under the policy, now named as Brighthouse.

24. The policy provided a variety of benefits including.

a. Community-based care, including services provided by individuals that are not affiliated with an agency;
b. Alternative Care Benefits; and
c. Waiver of Premium Benefits.

25. Beginning in 2000 Martha Jackling (now deceased) was a chronically ill individual within the meaning of the policy.

26. From October 30, 2000 until May 18. 2014, except for certain periods of hospital confinement, Ms. Jackling received community-based services in the nature of assistance with cooking, cleaning, personal hygiene, shopping, laundry, standby assistance, substantial assistance, substantial supervision and other services.

27. For this period Ms. Jackling was eligible for standby assistance, and needed substantial supervision.

28. Defendants wrongfully denied benefits for this on the grounds that the care providers were not licensed or certified.

29. From May 5, 2014 to May 7, 2014 Ms. Jackling was in Strong Memorial Hospital requiring certain aide services by her doctor which the hospital could not provide.

30. Said services were ordered by her doctor and could only be done in a hospital setting at a nursing home rate.

31. The amount owed under the policy for such services totaled $14,850.00.

32. The cost of said services should have been paid under the terms of the policy Alternative Care Status provisions.

33. Defendants have not paid for said services and denied payment for them on or about June of 2014.

34. As a result, Plaintiff suffered lost investment income and appreciation.

35. Upon information and belief, there is at least one class action suit against Defendants for failure to pay room and board charges, similar to its failure to pay Plaintiff for room and board charges.

36. Upon information and belief, Defendants have engaged in a scheme to sell long- term care policies which it knew or should have known that the Policy would not be paid as written.

## AS AND FOR A FIRST CAUSE OF ACTION BREACH OF CONTRACT

37. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 36 of the Complaint as if fully set forth herein.

38. Plaintiff had a contractual agreement with Defendant pursuant to the Policy that Defendant would pay for approved claims.

39. Plaintiff had an approved claim for the period from September 30, 2000 to May 18, 2014. The Policy provided that there would be an elimination period of 20 days prior to its initiating payment of claims.

40. Defendant failed to pay for more than 20 days of Plaintiff's claim.

41. The Policy provided that payment would be made to Plaintiff at the rate of between $75.00 and $167.00 per day.

42. Defendant failed to pay the full amount of $324,000.00 for at least some of the covered days.

43. Plaintiff is entitled to the benefits pursuant to the Policy plus interest.

**AS AND FOR A SECOND CAUSE OF ACTION BAD FAITH BREACH OF INSURANCE CONTRACT**

44. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 43 of the Complaint as if fully set forth herein.

45. Plaintiff had a contractual agreement with Defendant pursuant to the Policy that Defendants would pay for approved claims.

46. Plaintiff had an approved claim for the period from September 30, 2000 to May 18, 2014.

47. The Policy provided that there would be an elimination period of 20 days prior to its initiating payment of claims.

48. Defendant failed to pay for more than 20 days of Plaintiff's claim.

49. The Policy provided that payment would be made to Plaintiff at the rate of between $75.00 and $167.00 per day.

50. Defendant failed to pay the full amount of between $75.00 and $167.00 per day for at least some of the covered days.

51. Plaintiff is entitled to the benefits pursuant to the Policy plus interest at the legal rate of nine percent.

52. Upon information and belief, Defendants' failure to properly pay Plaintiff pursuant to the Policy is part of a pattern of Defendants' failure to pay other insureds with long-term care policies in the same manner as it failed to pay Plaintiff.

53. If Defendants had such a scheme, the failure to pay Plaintiff's claims would be a bad faith breach of an insurance contract.

54. If it is demonstrated that Defendants engaged in bad faith breach of insurance contract it should be ordered to pay punitive damages.

**AS AND FOR THIRD CAUSE OF ACTION FRAUD**

55. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 54 of the Complaint as if fully set forth herein.

56. Plaintiff had a contractual agreement with Defendant pursuant to the Policy that Defendant would pay for approved claims.

57. Plaintiff had an approved claim for the period from September 30, 2000 to May 18, 2014.

58. The Policy provided that there would be an elimination period of 20 days prior to its initiating payment of claims.

59. Defendant failed to pay for more than 20 days of Plaintiff's claim.

60. The Policy provided that payment would be made to Plaintiff at the rate of between $75.00 and $167.00 per day.

61. Defendant failed to pay the full amount of between $75.00 and $167.00 per day for at least some of the covered days.

62. Upon information and belief, there has been at least one class action lawsuit filed against Defendants for fraud in relation to its failure to pay pursuant to the long-term care policy, a failure similar to Defendants' failure to pay Plaintiff's claims.

63. Upon information and belief, Defendants knowingly misrepresented to Plaintiff when she purchased the Policy that Defendants would fully pay for coverage pursuant to the Policy when it knew it would not do so.

64. If Defendants engaged in fraudulent conduct, such conduct is egregious and warrants the payment of punitive damages Defendants.

**AS AND FOR A FOURTH CAUSE OF ACTION DECEPTIVE ACTS AND PRACTICES: ARTICLE 22A, SECTION 349 OF THE GENERAL BUSINESS LAW OF THE STATE OF NEW YORK**

65. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 64 of the Complaint as if fully set forth herein.

66. Plaintiff had a contractual agreement with Defendants pursuant to the Policy that Defendant would pay for approved claims.

67. Plaintiff had an approved claim for the period from from September 30, 2000 to May 18, 2014.

68. The Policy provided that there would be an elimination period of 20 days prior to its initiating payment of claims.

69. Defendant failed to pay for more than 20 days of Plaintiff's claim.

70. The Policy provided that payment would be made to Plaintiff at the rate of between $75.00 and $167.00 per day.

71. Defendant failed to pay the full amount of between $75.00 and $167.00 per day for at least some of the covered days.

72. Upon information and belief, there has been at least one class action lawsuit filed against Defendants for fraud in relation to its failure to pay pursuant to the long-term care policy, a failure similar to Defendants' failure to pay Plaintiff's claims.

73. Upon information and belief, Defendants knowingly misrepresented to Plaintiff when she purchased the Policy that Defendants would fully pay for coverage pursuant to the Policy when it knew it would not do so.

74. If the alleged misrepresentations occurred, this would constitute a violation of the General Business Law of the State of New York §349 subparagraphs (a), (g) and (h) in that Defendants knowingly misrepresented to Plaintiff and other consumers who purchased policies from Defendants pertinent facts or policy provisions relating to insurance coverage issues, and that the actions of Defendants amounted to a deceptive practice in the furnishing of these insurance benefits.

75. Should the above allegations be proven true, as a result of such above-described actions, Plaintiff is entitled to treble damages up to One Thousand Dollars ($1,000.00), plus reasonable attorney's fees and costs, for which demand is hereby made.

76. Should the above allegations be proven true, as a result of the above-described actions, Defendants should be ordered to pay punitive damages.

WHEREFORE, Plaintiff demands judgment as follows:

1. For a judgment in all amounts owed to her pursuant to the Policy;
2. For interest on all amounts owed Plaintiff;
3. For a judgment pursuant to New York State General Business Law A§) 349 entitling plaintiff to treble damages up to One Thousand Dollars ($ 1,000), plus reasonable attorney's fees and costs
4. For a judgment pursuant to New York State General Business Law §349 awarding punitive damages to Plaintiff;
5. For punitive and exemplary damages against Defendant;
6. For such other and further relief that this Court may deem proper and just.

Dated: July 27, 2020
Rochester, New York

**ELLIOTT STERN CALABRESE, LLP**

David S. Stern, Esq.
Office & P.O. Address:
One East Main Street
Rochester, New York 14614
Tele: (585) 232-4724
Fax: (585) 232-6674
Email: dstern@elliottstern.com

# VERIFICATION

STATE OF NEW YORK,
COUNTY OF MONROE, ss.

William T. Jackling, being duly sworn, deposes and says:

Deponent has read the foregoing **COMPLAINT** and know the contents thereof. The contents of the **COMPLAINT** are true to my knowledge, except as to those matters therein stated to be alleged upon information and belief, and as to those matters I believe them to be true.

William T. Jackling

Subscribed and sworn to before me
on July 27, 2020

Notary Public

DAVID S. STERN
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 02ST4971228
Qualified in Monroe County
Commission Expires August 24, 2022

MONROE COUNTY CLERK'S OFFICE

THIS IS NOT A BILL. THIS IS YOUR RECEIPT.

Receipt # 2519197

Book Page CIVIL

Return To:
DAVID SCOTT STERN
One East Main Street
Rochester, NY 14614

No. Pages: 3

Instrument: MISCELLANEOUS DOCUMENT

Control #: 202010160297
Index #: E2020004474

Date: 10/16/2020

Jackling, William T

Time: 11:31:45 AM

Brighthouse Life Insurance Company
Travelers
Metlife
Genworth
Brighthouse Financial

Total Fees Paid: $0.00

Employee:

State of New York

MONROE COUNTY CLERK'S OFFICE
WARNING – THIS SHEET CONSTITUTES THE CLERKS ENDORSEMENT, REQUIRED BY SECTION 317-a(5) & SECTION 319 OF THE REAL PROPERTY LAW OF THE STATE OF NEW YORK. DO NOT DETACH OR REMOVE.

JAMIE ROMEO

MONROE COUNTY CLERK

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF MONROE

Index #E2020004474
Date Filed: 07/09/2020

WILLIAM T. JACKLING, as Executor of the Estate of Martha A. Jackling,
Plaintiff(s)

-vs-

BRIGHTHOUSE LIFE INSURANCE COMPANY, TRAVELERS, METLIFE, GENWORTH, BRIGHTHOUSE FINANCIAL.
Defendant(s)

Mark TenEyck, being duly sworn, deposes and says:
Deponent is over the age of 18 years and is a resident of New York State. That on September 22, 2020 deponent personally Certified Mailed the following documents: Summons with Notice and transmitted them via United States Postal Service under the tracking number: 7020 0090 0002 2309 9603. (Evidence attached) to the New York State Department of Financial Services located at 99 Washington Avenue, 20th Floor, Albany NY 12231

The above entitled action was service upon: BRIGHTHOUSE LIFE INSURANCE COMPANY OF NY.

That at the time of making service, deponent paid to the New York State Department of Financial Services the fee prescribed by Law in the amount of $40.00

Mark TenEyck

Sworn to before me
October 5, 2020

Maureen P. TenEyck

MAUREEN P. TENEYCK
Notary Public, State of New York
No. 01TE6119365
Qualified in Rensselaer County
Commission Expires Nov. 26, 2020

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE

7020 0090 0002 2309 9603

| | |
|---|---|
| Certified Mail Fee $ 3.55 | |
| Extra Services & Fees (check box, add fee as appropriate) ☒ Return Receipt (hardcopy) $ 2.85 ☐ Return Receipt (electronic) $ ☐ Certified Mail Restricted Delivery $ ☐ Adult Signature Required $ ☐ Adult Signature Restricted Delivery $ | Postmark Here |
| Postage $ 3.40 | 9/20/20 |
| Total Postage and Fees $ 9.80 | |
| Sent To NYS DFS | |
| Street and Apt. No., or PO Box No. | |
| City, State, ZIP+4® Brighthouse / Genworth | |

PS Form 3800, April 2015 PSN 7530-02-000-9047 See Reverse for Instructions

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:
NYS Dept of Financial Services
1 Commerce Plaza Ste 2003
99 Washington Ave, 20th Fl
Albany, NY 12231

9590 9402 5925 0049 8616 65

2. Article Number (Transfer from service label)
7020 0090 0002 2309 9603

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X [signature] ☐ Agent ☐ Addressee

B. Received by (Printed Name) Linda Flynn
C. Date of Delivery 9/28/20

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
Mail
Mail Restricted Delivery
0)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☒ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053 Domestic Return Receipt

MONROE COUNTY CLERK'S OFFICE

THIS IS NOT A BILL. THIS IS YOUR RECEIPT.

Receipt # 2519198

Book Page CIVIL

Return To:
DAVID SCOTT STERN
One East Main Street
Rochester, NY 14614

No. Pages: 3

Instrument: MISCELLANEOUS DOCUMENT

Control #: 202010160298
Index #: E2020004474

Date: 10/16/2020

Jackling, William T

Time: 11:31:48 AM

Brighthouse Life Insurance Company
Travelers
Metlife
Genworth
Brighthouse Financial

Total Fees Paid: $0.00

Employee:

State of New York

MONROE COUNTY CLERK'S OFFICE
WARNING – THIS SHEET CONSTITUTES THE CLERKS ENDORSEMENT, REQUIRED BY SECTION 317-a(5) & SECTION 319 OF THE REAL PROPERTY LAW OF THE STATE OF NEW YORK. DO NOT DETACH OR REMOVE.

JAMIE ROMEO

MONROE COUNTY CLERK

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF MONROE

Index #E2020004474
Date Filed: 07/09/2020

WILLIAM T. JACKLING, as Executor of the Estate of Martha A. Jackling,
Plaintiff(s)

-vs-

BRIGHTHOUSE LIFE INSURANCE COMPANY, TRAVELERS, METLIFE, GENWORTH, BRIGHTHOUSE FINANCIAL.
Defendant(s)

Mark TenEyck, being duly sworn, deposes and says:
Deponent is over the age of 18 years and is a resident of New York State. That on September 22, 2020 deponent personally Certified Mailed the following documents: Summons with Notice and transmitted them via United States Postal Service under the tracking number: 7020 0090 0002 2309 9603. (Evidence attached) to the New York State Department of Financial Services located at 99 Washington Avenue, 20th Floor, Albany NY 12231

The above entitled action was service upon: GENWORTH LIFE INSURANCE COMPANY OF NY.

That at the time of making service, deponent paid to the New York State Department of Financial Services the fee prescribed by Law in the amount of $40.00

Mark TenEyck

Sworn to before me
October 5, 2020

Maureen P. TenEyck

MAUREEN P. TENEYCK
Notary Public, State of New York
No. 01TE6119365
Qualified in Rensselaer County
Commission Expires Nov. 26, 2022

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

**OFFICIAL USE**

7020 0090 0002 2309 9603

Certified Mail Fee $ 355

Extra Services & Fees *(check box, add fee as appropriate)*
- ☑ Return Receipt (hardcopy) $ 285
- ☐ Return Receipt (electronic) $
- ☐ Certified Mail Restricted Delivery $
- ☐ Adult Signature Required $
- ☐ Adult Signature Restricted Delivery $

Postage $ 3.40

Total Postage and Fees $ 9.80

Postmark Here 9/20/20

*Sent To* NYS DFS

*Street and Apt. No., or PO Box No.*

*City, State, ZIP+4®* Brighthouse / Genworth

PS Form 3800, April 2015 PSN 7530-02-000-9047 See Reverse for Instructions

---

**SENDER: *COMPLETE THIS SECTION***

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

NYS Dept of Financial Services
1 Commerce Plaza Ste 2003
99 Washington Ave, 20th Fl
Albany, NY 12231

9590 9402 5925 0049 8616 65

2. Article Number *(Transfer from service label)*
7020 0090 0002 2309 9603

***COMPLETE THIS SECTION ON DELIVERY***

A. Signature
X [signature] ☐ Agent ☐ Addressee

B. Received by *(Printed Name)* Linda Flynn
C. Date of Delivery 9/28/20

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
- ☐ Adult Signature
- ☐ Adult Signature Restricted Delivery
- ☑ Certified Mail®
- ☐ Certified Mail Restricted Delivery
- ☐ Collect on Delivery
- ☐ Collect on Delivery Restricted Delivery
- ...ail
- ...ail Restricted Delivery
- ...0)
- ☐ Priority Mail Express®
- ☐ Registered Mail™
- ☐ Registered Mail Restricted Delivery
- ☑ Return Receipt for Merchandise
- ☐ Signature Confirmation™
- ☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053 Domestic Return Receipt