UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

WILLIAM T. JACKLING,
As Executor of the Estate of
Martha A. Jackling

                              Plaintiff,              DECISION AND ORDER

          v.                                         20-CV-6899-MJP

BRIGHTHOUSE LIFE INSURANCE
COMPANY,

                              Defendant.

## INTRODUCTION

**Pedersen, M.J.** Before the Court is defendant Brighthouse Life Insurance Company's ("Defendant") motion for summary judgment (ECF No. 47.) Plaintiff, William T. Jackling, as executor of the estate of Martha A. Jackling, ("Plaintiff" or "Jackling") opposes Defendant's motion (ECF No. 66.) Defendant filed a reply in further support of its motion. (ECF No. 72.) For the reasons stated below, the Court grant's Defendant's motion for summary judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is seeking relief regarding claims for benefits pertaining to a Long-Term Care Policy ("Policy") issued in January 2000 to Plaintiff's decedent, Martha A. Jackling, from Brighthouse Life Insurance Company. (Kingsley Decl. in Support of Defendant's Mot. for Sum. J. ¶ 2 (citing to Plaintiff's Summons with Notice of Complaint, ECF No. 47-2.), Mar. 11, 2021, ECF No. 47-51 ("Kingsley Decl.".) Prior to filing the current action, Plaintiff commenced an arbitration proceeding through the

American Arbitration Association on August 28, 2018. (Kingsley Decl., ¶ 4., ECF No. 47-1.) Following disputes regarding the proper named parties and prior to a decision by the arbitrator on any substantive matters, the arbitration ended prematurely. (Kingsley Decl.*,* ¶ 4, ECF No. 47-1., citing ECF No. 47-4.)

Plaintiff commenced this action on July 9, 2020, in New York State Supreme Court in Monroe County. (Notice of Removal, ¶1, ECF No. 1). Defendant removed the State Court action to the Western District of New York on October 27, 2020, based on diversity. (Notice of Removal, ECF No. 1.) Following various motions and discovery, Defendant filed this Motion for Summary Judgment on December 30, 2021. (Def's Mot. for Sum. J., ECF No. 47.) Defendant argues that Plaintiff's claims for breach of implied duty of good faith, fraud, and New York General Business Law § 349 are time barred and that these claims must also be dismissed for failure to state an action. (Def.'s Mem. of Law at 14–15. ECF No. 47-51.) Defendant further argues that Plaintiff's claims for punitive and consequential damages must be dismissed. (*Id*. at 29.) Finally, Defendant argues that Plaintiff does not have a claim because the Policy did not provide coverage for the benefits claimed by Plaintiff and any alleged Proof of Loss provided is inadequate, unauthenticated, and otherwise falsified. (*Id*. at 9.)

## STATEMENT OF FACTS

Plaintiff fails to cite to evidence in support of most of his purported statements of fact. While the Local Rule does not currently require this, the Federal Rule does.

Federal Rule of Civil Procedure 56(c), Procedures, states:

(1) Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to *particular parts* of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c) (emphasis added). Because Plaintiff's counsel failed to cite to *particular parts* of materials it provided, the Court experienced great difficulty finding related evidence in support of Plaintiff's 164 pages of exhibits. Therefore, unless otherwise stated, the following facts, copied directly from Defendant's submission, are undisputed. Where Plaintiff has raised an issue of fact, the Court addresses it below. Because of the length of this section, the Court has omitted citations to Defendant's Statement of Facts and has only cited to Plaintiff's response and Defendant's reply where Plaintiff raised a dispute.

**A. The Long-Term Care Policy**

1. Brighthouse's name predecessor, the Travelers Insurance Company issued a Long Term Care Policy, Policy Number LC4176400 ("the Policy") to Plaintiff's decedent, Martha A. Jacking in January 2000. (Declaration of Leanne Grasso declared December 21, 2021 ("Grasso Declaration"), ¶4 and Exhibit A. *See also* The Affirmation of Jason Frain, affirmed October 27, 2020, ¶2 and Exhibit A, ECF No. 1-3).

2. The Policy provides in relevant part:

**BENEFITS FOR NURSING FACILITY CARE**

**Alternate Care Status** – If you are confined to a hospital, and a physician determines that You should receive covered Nursing Facility Care or covered Home Health Care Services, but You cannot access these services due to an inability to find available care, You will be considered to be in "Alternate Care Status." During the time You are in Alternate Care Status, You will be treated for the purpose of satisfying the Policy Elimination Period and receive policy benefits as if You were confined to a covered Nursing Care Facility. Daily Benefit Amount We will

3

pay 1005 of the Nursing Facility Care expenses incurred, to the extent such care constitutes Qualified Long Term Care Services, up to the Nursing Facility Care Daily Benefit Amount, including care delivered while You are in Alternate Care Status, for each day You are confined overnight in a Nursing Care Facility, Alzheimer's Facility or Hospice Facility. BENEFITS FOR COMMUNITY-BASED CARE **Community-Based Care** – Home Health Care received in Your Home or Adult Day Care received at an Adult Day Care Center, as such terms are defined below.

## HOME HEALTH CARE

Home Health Care Services include any one of the following:

7. Services of a licensed home health agency, if licensing is required by the state, to provide:

a) Home health aide services (including services of a home health aide, where Human Assistance is required to aid You in necessary travel, such as travel to and from a physician's office); or

b) Home hospice services; or

c) Homemaker services, including meal preparation, personal laundry services, light housekeeping and grocery shopping, provided that these services are prescribed in Your written Plan of Care and are performed by any of the individuals described above. Such services must be performed during the same visit in which the individual is primarily providing custodial/personal care. Services described in Items #7a, b or c are considered to be one service.

Services of a licensed or certified home health aide who does not report through a licensed or certified home health agency will be covered as long as the following conditions are met:

1) You must utilize the Care Coordination Benefit as described in Your policy; and

2) The Licensed Health Care Practitioner develops a written Plan of care certifying the need for care, and arranges for and approves the necessary services of a certified home health aide.

**Home** – Any place where You reside. Home is not a Nursing Care Facility, Assisted Care Living Facility, Alzheimer's Facility, Hospice Facility or hospital.

**Eligibility For The Payment Of Community-Based Care Benefits** We will pay the Benefits for Community-Based Care upon written certification by a Licensed Health Care Practitioner in a written Plan of care that You are a Chronically Ill Individual as defined on Page 4 of the Policy. Such Community-Based Care must be delivered pursuant to a written Plan of Care. Benefits are not payable during the Elimination Period or if the Policy Maximum has been reached. Benefits paid for Community- Based Care will be counted against the Policy Maximum.

BENEFITS FOR CARE COORDINATION

**Care Coordination** – The service provided by a Licensed Health Care Practitioner that You may select, which involves assessing the need for care, creating and implementing a written Plan of Care, where applicable, and periodically reviewing the written Plan of Care.

## GENERAL PROVISIONS

**Notice of Claims** – We must receive written notice of claim at Our Office within 60 days after any covered Loss occurs or begins. If notice cannot be given at that time. It must be given as soon as reasonably possible. When We get the notice, We will send out forms for filing proof of Loss. If We do not send the forms within 15 days after receiving written notice, Our requirements will be met if We receive written proof of the event and type of the Loss within the time stated below.

**Proof of Loss** – We must receive proof of Loss within 90 days after the date the Loss began or occurred. If it is not reasonably possible to give this timely proof, the claim will not be affected if it is sent as soon as is reasonable. Unless the person making the claim is legally incapacitated, proof must be given within one year from the time it is otherwise due. **Legal Actions** – If, in Your opinion, We have failed to pay the benefits provided by this policy, You may bring action to recover on this policy after 60 days from the date the proof of Loss has been given. However, no action may be brought against Us after more than three years from the date proof of loss should have been furnished.

(Grasso Declaration, Ex. A).

Plaintiff disputes Defendant's factual assertion, claiming that Defendant altered its recitation of a portion of the policy by writing, "that it'll pay 1005 of the

Nursing Facility Care expenses incurred…." Obviously, this is a typographical error and should read "100%" instead of "1005." The Court notes that the percentage key is located above the "5" key on a standard computer keyboard. Plaintiffs' objection does not raise a material issue of fact precluding summary judgment.

> 3. Plaintiff's [sic] decedent, Martha A. Jackling, passed away on May 18, 2014. (Grasso Declaration, Exhibit B).

> 4. Plaintiff opened five separate claims under the Policy. (Grasso Decl. ¶ 6).

Plaintiff disputes Defendant's claim that there were *five* filed claims, contending, instead, there were only four. Plaintiff does not provide any evidence in support of his contention; thus, Plaintiffs' objection does not raise a material issue of fact precluding summary judgment.

> 5. Plaintiff notified Brighthouse that they [sic] would like to submit a claim under the Policy in August 2001. Brighthouse assigned number A005533 to the claim. (Grasso Affirmation [sic], ¶7 and Exhibit C).

Plaintiff claims that the date should actually be October 30, 2000, but does not provide any cite or even a *hint* as to what supports this contention. Defendant claims it first received notice of claim under the Policy in August 2001. (Grasso Affirmation, ¶¶7-8, Exhibit C and D). Plaintiffs' objection does not raise a material issue of fact precluding summary judgment.

> 6. After claim A005533 was opened, Brighthouse acknowledged the claim and forwarded the necessary claims forms and documents to Plaintiff for their completion and return to Brighthouse so that the claim could be processed. (Grasso Declaration, ¶9 and Exhibit D).

> 7. Mrs. Jackling received services provided by the Visiting Nurse Service of Rochester and Monroe County, Inc., for the period August 20, 2001, to October 24, 2001 (Grasso Declaration, ¶10 and Exhibits C and D).

8. Brighthouse was advised that all of the charges for those services were paid by Medicare, and therefore not payable under the policy. (Grasso Declaration, ¶10).

9. Plaintiff did not submit any claim forms, information or invoices seeking reimbursement for long term care services, or other proof of loss for long term care services in relation to claim A005533, despite several notifications from Brighthouse that further documentation and proof of loss was required. (Grasso Declaration ¶¶11-13 and Exhibits F-H).

Plaintiff claims a dispute of fact on this point requires a trial. He asserts that:

Plaintiff provided documentation regarding Martha's condition that she required care, as seen in the Jackling Declaration. All evaluations and plans of care were performed by Brighthouse's agents, Nations CareLink being one, which prescribed plans of care. Martha and Mr. Jackling implemented the verbal instructions that were provided with the understanding that the written plans of care were provided to Brighthouse by their paid representatives. For example, the September 18, 2007, and September 24, 2007, Plans of Care contained the documentation that the Insurance Company informed the Insured and the Nurse Agent that it needed to complete its evaluation for the Plan of Care that the Insurance Company stated it would seek.

(Pl's Resp. ¶9.) Defendant responded:

Plaintiff does not cite specific or admissible evidence demonstrating that Mrs. Jackling was evaluated by Brighthouse with regard to A00533, or any basis for the statement that "Martha and Mr. Jackling implemented the verbal instructions that were provided with the understanding that written plans of care were provided to Brighthouse by their paid representatives." There are no facts supporting the statement that "verbal instructions were provided" to the Jacklings, or any basis for an understanding that Brighthouse's representative provided "written plans of care." First, contrary to Plaintiff's unsupported statement, Brighthouse did not conduct a benefit eligibility assessment of Mrs. Jackling regarding claim A005533, and relied on medical documentation from Plaintiff to determine eligibility. (Grasso Declaration, Exhibit C, Page 5). Second, plans of care need to be updated regularly to continue to qualify for benefits. Third, Defendant's fact does not address whether Mrs. Jackling required care. Rather, Plaintiff did not submit any documentation to support that [sic] expenses under the policy were incurred, *i.e.* Plaintiff did not submit any claim forms, information or invoices seeking reimbursement for long term care services, or other proof of loss for long term care services. (Grasso Declaration, generally). Further, the Policy requires that the insured provide notice of claim, and

proof of loss. (Grasso Declaration, Exhibit A, Page 18). Brighthouse is not responsible for preparation of proof of loss, Plans of Care, or other documents.

(Def's Reply. ¶9.)

In a declaration filed on April 25, 2022, Jackling states the following:

66. On February 11, 2016, the Estate of Martha Jacking's attorney, David Kaplan, sent a request to arbitrate through certified mail. (Exhibit R)

67. However, we were told through a letter dated February 29, 2016, from MetLife stating that because MetLife had not notified the Partnership about the denial in error, and the Partnership did not inform me regarding the same, my right to arbitrate had not triggered. (Exhibit S)

68. The Long Term Care Insurance Policy states on pg. 9: "Dispute Resolution – In addition to any rights granted to You under the program, you may take legal action against Us relative to a claim denial as described in the provision below. Under this program, You may request arbitration before taking legal action to resolve a denied benefit authorization request only if You are notified by the Partnership that Your benefit authorization request might have been denied in error. ..." (Exhibit A)

69. As such, as of February 29, 2016, myself and the Estate of Martha Jackling relied on the representations that were stated by Brighthouse and its predecessors and did not file any cause of action until l was notified by the New York State Partnership that I had a right to file the cause of action.

(Jackling Decl. ¶¶ –69, ECF No. 64.) In paragraph 68, Jackling restates the policy terms limiting *arbitration* by a condition precedent: notification from the New York State Partnership. In paragraph 69, he extends that same condition precedent to filing a *lawsuit*, which is not limited to a condition precedent. Plaintiffs' objection does not raise a material issue of fact precluding summary judgment.

10. Plaintiff advised Brighthouse on March 26, 2002 that he was providing his wife's care at that time. (Grasso Declaration ¶15).

8

Plaintiff claims to dispute this fact but responds only with: "Plaintiff informed Brighthouse's predecessor that he was providing care and sought reimbursement." (Pl's Resp. ¶ 10). Plaintiff does not cite to any evidence in support of his contention. Plaintiffs' objection does not raise a material issue of fact precluding summary judgment.

11. The Policy excludes coverage for care provided by family members. (Grasso Declaration, Exhibit A, Page 16).

Plaintiff responds: "Plaintiff was informed that the policy does not allow for family members to provide for care for our family members." (Pl's ¶11) The actual policy states:

> For services provided by a member of Your immediate family unless: (a) the member of Your immediate family is a regular employee of the organization which is providing the services; (b) the organization receives the payment for the services; and (c) the member of Your immediate family receives no compensation other than the normal compensation for employees in his or her job category.

(Grasso Declaration, Ex. A at 16). Plaintiffs' objection does not raise a material issue of fact precluding summary judgment.

12. As a result of the Plaintiff's failure to submit any documents or information regarding the claim, other than those which were paid for by Medicare, Brighthouse closed claim A005533 on March 26, 2002. (Grasso Declaration, ¶15).

Plaintiff disputes this statement writing:

Brighthouse may have claimed to close the claim on March 22, 2002. However, the statement regarding why they closed the claim is a question of fact that the court should review at trial period. Mr. Jackling and Mrs. Jackling were dealing with the fact that she was extremely ill and Mr. Jackling was being responsive. The facts show that he was trying to assist his wife who was very ill. The characterization of lack of responsiveness to justify the granting of summary judgment is a dispute of fact. All paperwork was done by Brighthouse.

(Pl's Resp. ¶12). Plaintiff's contention is without citation to evidentiary support in the record. Plaintiffs' objection does not raise a material issue of fact precluding summary judgment.

> 13 Plaintiff notified Brighthouse on February 20, 2003 that they [sic] wished to submit a new claim under the Policy. Grasso Affirmation. Brighthouse opened a claim and assigned number A032795 to the February 20, 2003 claim. (Grasso Declaration, ¶16 and Exhibit I).

> Plaintiff disputes this assertion, stating:

> Disputed. And even on that same date that it closed a claim he was working with, they provided information that they then used to close the claim hours, 26, 2002 period [sic]. Additionally, at that time, and prior to that letters from MetLife had stated that Mr. Jackling's wife, Martha Jackling, had satisfied the lifetime benefit requirements, and there was no reservation of rights period [sic]. Those letters to [sic] were provided in the Jackling declaration period [sic], Paragraph 13, Plaintiff, again, sought to seek [sic] reimbursement for services under the policy. The position that plaintiff wanted to open a new claim, or rather wanted to continue, with the same claim is different period [sic]. It is not disputed that the insurance company may have characterized it as a new and open claim and assigned a new number to it.

(Pl's Resp. ¶ 13.) This does not address the disputed assertion and does not cite to evidentiary proof in admissible form. Plaintiffs' objection does not raise a material issue of fact precluding summary judgment.

> 14. After claim A032795 was opened, Brighthouse acknowledged the claim and forwarded the necessary claims forms and documents to Plaintiff for their completion and return to Brighthouse so that the claim could be processed. (Grasso Declaration, ¶16 and Exhibit I).

> Plaintiff disputes this fact, stating:

> Disputed. At that time period, it is undisputed that Brighthouse, or its predecessor opened a new claim. And it is likely that all of the forms were provided to plaintiff. Because Mrs. Jackling's condition had not improved or changed during the entire timeframe, some of the same information was already in the position of Brighthouse. However, because it kept opening and closing claims, Brighthouse kept requesting similar information as was already provided at earlier dates.

(Pl's Resp. ¶ 14.) This does not contradict Defendant's assertion; therefore, Plaintiffs' objection does not raise a material issue of fact precluding summary judgment.

> 15. Plaintiff advised Brighthouse that he had no out of pocket expenses for the insured's care. (Grasso Declaration, ¶17 and Exhibit J).

> Plaintiff contests this:

> Disputed. The language referred to by the Grasso declaration does not say that Plaintiff's advised that he had no out of pocket expenses for the insured's care. Instead, it states that he usually did not have medical expenses for the insured's care. This is consistent with what is later and continued to go forward. That plaintiff has never requested any type of medical expenses related to insurance care, but rather seeking for costs related to aides that provided care for Mrs. Jackling, including homemaking services. This is dispute of fact that requires trial.

(Pl's Resp. ¶15.) The statement in question is "He stated he doesn't necessarily want reimbursement – as he usually has no out of pocket expenses – his TriCare Ins and Medicare have paid everything." (Grasso Decl. ¶ 17 and Ex. J). The statement speaks for itself. Plaintiffs' objection does not raise a material issue of fact precluding summary judgment.

> 16. Plaintiff did not submit any claim forms, information or invoices seeking reimbursement for long term care services, or other proof of loss for long term care services in relation to claim A032795, despite several notifications from Brighthouse that further documentation and proof of loss was required. (Grasso Declaration, ¶18 and 19 and Exhibits J and K).

Plaintiff disputed this, stating "Plaintiff had been informed that it was not difficult to reopen the claim as set forth in Exhibit J of the Grasso phone notes and was focusing on caring for his wife who was severely ill plaintiff sought to continue to provide the documentation at a later date." (Pl's Resp. ¶ 16.) This does not address the issue. Plaintiffs' objection does not raise a material issue of fact precluding summary judgment.

17. As a result of the Plaintiff's failure to submit any documents or information regarding the claim. Brighthouse closed claim A032795 on April 2, 2003. (Grasso Declaration, ¶19 and Exhibit J).

Plaintiff objected, stating: "All initial forms were done by Brighthouse" (Pl's

Resp. ¶17). As Plaintiff does not provide evidence to refute the assertion, Plaintiffs'

objection does not raise a material issue of fact precluding summary judgment.

18. Plaintiff notified Brighthouse on August 7, 2007 that they [sic] wished to submit a claim under the Policy. Brighthouse opened a claim and assigned number A136289 to the August 7, 2007 claim. (Grasso Declaration, ¶20 and Exhibit L).

19. After claim A136289 was opened, Brighthouse acknowledged the claim and forwarded the necessary claims forms and documents to Plaintiff for their completion and return to Brighthouse so that the claim could be processed. (Grasso Declaration, ¶21 and Exhibit M).

Plaintiff claims that all forms were done by Defendant, with Defendant

responding:

Plaintiff does not cite any specific or admissible evidence supporting this response. It also does not provide specific information regarding what forms were allegedly "done" by Brighthouse.

Brighthouse did arrange for a benefit eligibility assessment to be conducted by Nation's CareLink, on September 18, 2007, a typewritten report of which was prepared for Brighthouse's file on September 24, 2007. (Jackling Declaration, Exhibits Z and AA).

Following the benefit eligibility assessment, Brighthouse provided Plaintiff with all necessary claims forms, and advised of additional forms and documents required to process the claim. (Grasso Declaration, ¶22, Exhibit N). The forms required include things that Brighthouse could not prepare, such as the Insured's Statement, Attending Physician Narrative, Home Health Care Statement, Home Health Care Agency License, and Detailed Invoices. The same forms and request for information was sent to Plaintiff on December 6, 2007. (Grasso Declaration, ¶23, Exhibit O).

Further, the Policy provides that the insured is responsible for submitting the necessary Notice of Claims and Proof of Loss. It provides:

**GENERAL PROVISIONS**

**Notice of Claims** – We must receive written notice of claim at Our Office within 60 days after any covered Loss occurs or begins. If notice cannot be given at that time. It must be given as soon as reasonably possible. When We get the notice, We will send out forms for filing proof of Loss. If We do not send the forms within 15 days after receiving written notice, Our requirements will be met if We receive written proof of the event and type of the Loss within the time stated below.

**Proof of Loss** – We must receive proof of Loss within 90 days after the date the Loss began or occurred. If it is not reasonably possible to give this timely proof, the claim will not be affected if it is sent as soon as is reasonable. Unless the person making the claim is legally incapacitated, proof must be given within one year from the time it is otherwise due.

**Legal Actions** – If, in Your opinion, We have failed to pay the benefits provided by this policy, You may bring action to recover on this policy after 60 days from the date the proof of Loss has been given. However, no action may be brought against Us after more than three years from the date proof of loss should have been furnished. (Grasso Declaration, Exhibit A, Page 18).

(Brighthouse Life Insurance Company's Reply to Plaintiff's Response to Defendant's Statement of Undisputed Material Facts and Counterstatement of Facts ¶ 19, ECF No. 72-7.)

The Court will not speculate regarding what forms were "done," and Plaintiff does not provide any citation to evidence; therefore, Plaintiffs' objection does not raise a material issue of fact precluding summary judgment.

20. On September 6, 2007, Brighthouse sent a letter to Plaintiff in relation to claim A136289, including the claims forms that needed to be filled out and submitted, and advising "Please note, if you are privately hiring home health care services as opposed to utilizing a home health care agency, a Care Coordinator must be in place to oversee the privately hired home health aide and to provide a written Plan of Care at least every 90 days. We will require a copy of the Care Coordinator's license and the Home Health Aide's certification, as well as their social security numbers." (Grasso Declaration, ¶21 and Exhibit M).

21. The same information was contained in a letter sent by Brighthouse to Plaintiff's decedent on October 12, 2007. (Grasso Declaration, ¶22 and Exhibit N).

22. Plaintiff did not submit any claim forms, information or invoices seeking reimbursement for long term care services, or other proof of loss for long term care services in relation to claim A136289, despite several notifications from Brighthouse that it had not received any completed claim forms or other documentation regarding the claim, and requesting the same. (Grasso Declaration, ¶¶22-24 and Exhibits N-P).

Plaintiff responds that he "did not send any license information for home health aides. Plaintiff researched NY State and found that licensing was not possible, therefore he was unable to provide the information." (Pl's Resp. ¶ 23.) Defendant replied stating that New York requires certification for "home health aides." 10 NYCRR §700.2 and NYCRR §505.14(e). NY Public Health Law §§3602 and 3613. (Brighthouse Life Insurance Company's Reply to Plaintiff's Response to Defendant's Statement of Undisputed Material Facts and Counterstatement of Facts ¶ 22, ECF No. 72-7, ("Def.'s Reply".)) Plaintiff does not deny Defendant's assertion that he did not submit the information requested; therefore, Plaintiffs' objection does not raise a material issue of fact precluding summary judgment.

23. As a result of the Plaintiff's failure to submit any documents or information regarding the claim. Brighthouse closed claim A136289 on January 9, 2008. Grasso Affirmation, (Grasso Declaration, ¶24 and Exhibit P).

Plaintiff responded: "Dispute. For the reasons that this is subject to trial questions. However, it is agreed that Brighthouse closed the claim." (Pl's Resp. ¶ 23.) Plaintiff admits that the claim was closed, further, prior to closing the claim, Defendant advised Plaintiff, "[b]y letter dated February 19, 2008, Brighthouse advised Plaintiff that claim A136289 'has been closed because we have not received

responses to our requests for information required to adjudicate your claim.'"(Grasso Declaration, Exhibit P). Plaintiffs' objection does not raise a material issue of fact precluding summary judgment.

24. Plaintiff notified Brighthouse on December 7, 2011 that they wished to submit a claim under the Policy. Brighthouse assigned number A276691 to the December 7, 2011 claim. (Grasso Declaration, ¶¶25-26 and Exhibit Q).

Plaintiff states that he sought to reopen to the prior claim. Plaintiff's contention does not create a material issue of fact precluding summary judgment.

25. After claim A276691 was opened, Brighthouse acknowledged the claim and forwarded the necessary claims forms and documents to Plaintiff for their completion and return to Brighthouse so that the claim could be processed. (Grasso Declaration, Exhibit M).

26. On December 7, 2011, Brighthouse sent a letter to Plaintiff in relation to claim A276691, containing the same statement set forth in paragraph 20. including the claims forms that needed to be filled out and submitted, and advising "Please note, if you are privately hiring home health care services as opposed to utilizing a home health care agency, a Care Coordinator must be in place to oversee the privately hired home health aide and to provide a written Plan of Care at least every 90 days. We will require a copy of the Care Coordinator's license and the Home Health Aide's certification, as well as their social security numbers." (Grasso Declaration, ¶26, Exhibit Q).

Plaintiff states: "Dispute. Plaintiff does not dispute the letter just that the defendant sent a licensed individual provided a plan of care." (Pl's Resp. ¶ 24.) Plaintiff does not respond to or dispute the assertion. Plaintiffs' objection does not raise a material issue of fact precluding summary judgment.

27. Plaintiff advised Brighthouse on January 4, 2012 that he was providing the home health care for the insured, and that Medicare and Tricare paid for the expenses. (Grasso Declaration, ¶28 and Exhibit S).

Plaintiff responded: "Dispute [sic] Plaintiff did not seek medical expenses with paying for home health aides out of pocket." (Pl's Resp. ¶ 27.) Defendant replied, stating:

> The claims note provides:
>
> 2. Caller wants to discuss getting [waiver of premium] started – stated initiated claim for [waiver of premium]… Stated he is providing the [home health care] for the insured Stated Medicare and TriCare for life pays the expenses.
>
> (Grasso Declaration, Exhibit S, Page 7). The note includes the language cited by Defendant, which does not indicate that Tricor Ins. or Medicare paid only medical expenses.

(Def.'s Reply ¶ 27.) Plaintiffs' objection does not raise a material issue of fact precluding summary judgment.

> 28. Plaintiff did not submit any claim forms, information or invoices seeking reimbursement for long term care services, or other proof of loss for long term care services in relation to claim A276691, despite several notifications from Brighthouse that it had not received any completed claim forms or other documentation regarding the claim, and requesting the same. (Grasso Declaration, ¶¶27 and 29 and Exhibits R and Q).

Plaintiff states: "Dispute. Plaintiff had already provided some documentation to defendant regarding the claim." This vague statement without citation to evidentiary proof does not raise a material issue of fact precluding summary judgment.

> 29. As a result of the Plaintiff's failure to submit any documents or information regarding the claim, and at the request of Plaintiff, Brighthouse closed claim A276691 on February 24, 2012. (Grasso Declaration, ¶30 and Exhibit T).
>
> 30. Plaintiff notified Brighthouse on January 9, 2014 that they [sic] wished to submit a claim under the Policy. Brighthouse assigned number A368141 to the January 9, 2014 claim. (Grasso Declaration, ¶31 and Exhibit U).

Plaintiff states "Jackling sought to reopen the claim, but Brighthouse issued a new claim." This is not relevant to Defendant's assertion; Plaintiffs' objection does not raise a material issue of fact precluding summary judgment.

> 31. Plaintiff did submit documentation, and Brighthouse approved Nursing Facility Care Benefits for Mrs. Jackling's stay at a rehabilitation center from November 20, 2013 through January 12, 2014 and community-based care benefits provided by ComforCare Senior Services from January 13, 2014 through May 5, 2014. (Grasso Declaration, ¶32).

Plaintiff responds in opposition "Plaintiff never submitted documents for seeking reimbursement for the care at Highlands. Brighthouse may have obtained documents without Plaintiff[']s authorization. This is a dispute of facts." (Pl's Resp. 31). Defendant replied:

> Plaintiff does not cite any specific or admissible evidence supporting this response. Brighthouse sent a letter to Plaintiff on January 9, 2014, advising that Highlands Living Center was an eligible facility, but that Brighthouse had not completed its claim review. (Grasso Declaration, Exhibit U). Brighthouse sent a letter to Plaintiff on February 20, 2014, advising that "your claim for Nursing Facility Care benefits from Highlands Living Center…" was approved. (Grasso Declaration, Exhibit V, page 146). The benefits were not payable regarding the Highlands Living Center because they were paid by Medicare. (Grasso Declaration, Exhibit V, Page 130).

(Def's Reply 31.) Plaintiff does not cite to any evidence that Brighthouse obtained documents without authorization. Plaintiffs' objection does not raise a material issue of fact precluding summary judgment.

> 32. The Nursing Facility Care Benefits for Mrs. Jackling's stay at the rehabilitation center were not payable under the Policy as the costs were covered in full by Medicare. (Grasso Declaration, ¶32).

> 33. Brighthouse was provided with the certifications of the individuals who were providing care to Mrs. Jackling through ComforCare Senior Services. (Grasso Declaration, ¶33 and Exhibit V).

Plaintiff claims that "Defendant rejected Comforcare as set forth in its February 4th, 2014, letter—which is set forth in the counterstatement of facts. There, Defendant researched to learn that New York did not provide licensing to company's providing unskilled labor. Plaintiff never provided the documents that were requested, instead ComforCare was rejected multiple times for licensing requirements and then insurance researched and learned that New York did not require the licensing." (Pl's Resp. ¶ 33.)

Defendant replied: "Plaintiff does not cite any specific or admissible evidence supporting this response. Defendant objects on the basis that Plaintiff's statement is non-responsive, wholly speculative, hearsay, and contradicted by the documents. (Grasso Declaration, Exhibit V, Pages 59, 61, 168)." (Def.'s Reply ¶ 33.) Plaintiffs' objection does not raise a material issue of fact precluding summary judgment.

34. Brighthouse paid for the services of ComforCare Senior Services to Martha A. Jackling from January 12, 2014 until May 4, 2014, when Mrs. Jackling was admitted to the hospital. (Grasso Declaration, ¶34).

35. Martha A. Jackling passed away on May 18, 2014. (Grasso Declaration, Exhibit B).

36. According to the documentation provided to Brighthouse by ComforCare Senior Services, the services provided by the ComforCare home health aides to Martha Jackling when she was in the hospital between May 5, 2014 to May 18, 2014 by the home health aides consisted of companion care, answering questions, providing support and respite for Plaintiff, and per the timesheets, taking care of someone named "Roseanne." (Grasso Declaration, Exhibit V).

37. By letter dated June 13, 2014, Plaintiff advised Brighthouse for the first time that he was seeking payment for the costs incurred for the services of privately hired "personal care aides," who did not work through an agency, from August 25, 2001 to November 30, 2013, asserting that the policy did not require "personal care aides" to be certified for the benefits to be payable under the Policy. (Grasso Declaration, ¶¶35 and 36, and Exhibit W).

Plaintiff contends**:**

> Defendant's statement regarding the position that it was the first time that plaintiff sought payment for cost incurred from 2001 to 2013 is a question of fact that requires a trial. Additionally, this position is directly contradicted by the language in the letters that were addressed on paragraph 20, 21 and paragraph 26, that directly contemplate privately hired caregivers. Additionally, the question of fact regarding the language in section seven for the requirement.

(Pl's Resp. ¶37.) Defendant replies:

> Plaintiff does not cite any specific or admissible evidence supporting this response. Defendant's Statement of Undisputed Facts, Statements 20, 21 and 26 are initial claim letters. (Grasso Declaration, Exhibits M, N, and Q). They do not acknowledge a claim by Plaintiff for the services of privately hired caregivers. (Grasso Declaration, Exhibits M, N, and Q). They simply advised Plaintiff of the Policy requirements for privately hired home health care services. (Grasso Declaration, Exhibits M, N, and Q).Further, Plaintiff did not follow up or provide Proof of Loss regarding the prior claims.

(Def.'s Reply ¶ 37.) Plaintiffs' objection does not raise a material issue of fact precluding summary judgment.

> 38. In the letter, Plaintiff advised that "[f]rom the beginning, you denied benefits for this, claiming the providers had to be licensed. As a result of your repeated denials, I paid the bills for the personal care aides out of my pocket." (Grasso Declaration, ¶¶35 and 36, and Exhibit W).

> 39. Although they are not covered by the Policy, Brighthouse never denied benefits for "personal care aides," because Plaintiff had never made a claim regarding privately hired, uncertified personal care aides until June 13, 2014. (Grasso Declaration, ¶37).

Plaintiff responded: "Disputed. This contradicts the undisputed statement facts in paragraph 20, 21, and 26, which specifically discusses the requirement for privately care hired home healthcare aids. This is incorrect." (Pl.'s Resp. ¶ 39.)

Defendants reply:

> Plaintiff does not cite any specific or admissible evidence supporting this response. Defendant's Statement of Undisputed Facts, Statements 20,

21, and 26 and the documents referenced therein do not state that Plaintiff made a claim for the services of privately hired, uncertified aides. (Grasso Declaration, Exhibits M, N, and Q). They simply advised Plaintiff of the Policy requirements for privately hired home health care services. (Grasso Declaration, Exhibits M, N, and Q).

Defendant never denied a claim from Plaintiff because Plaintiff did not pursue any claim prior to 2014. (Grasso Declaration, 37).

(Def's Reply 39.) Plaintiffs' objection does not raise a material issue of fact precluding

summary judgment.

40. On July 7, 2014, Brighthouse wrote to Plaintiff, detailing the prior claims history and the closure of the claims based upon the Plaintiff's failure to submit the required claim documentation, and advising that the Policy provides "Community- Based Care Benefits" for certified privately hired home health aides, as long as a Care Coordinator develops and periodically updates a Plan of Care. (Grasso Declaration, ¶38, and Exhibit X).

Plaintiff responded:

This statement also contradicts paragraph 20, 21 and 26, where those letters, state: "As part of the Effort to determine the benefit eligibility. We have requested a local Nurse from Nation's care link to call within two days to schedule a functional assessment period. We will assume the cost of this functional assessment and the development of a plan of care Here (sic). Defendants Admit that it is not paying for and developing the plan of care to allow the individuals from nation's care link (sic) to come into the home and build the plan of care.

(Pl's Resp. ¶40.) Defendants replied:

Plaintiff does not cite any specific or admissible evidence supporting this response. Further, as set forth above, the letter at Statement 20, dated September 6, 2007, establishes that Brighthouse was scheduling a benefits eligibility assessment. (Grasso Declaration, Exhibit M). It also advises that "We will assume the cost of this functional assessment and the development of a Plan of Care," but never advises that it will have the Plan of Care prepared. (Grasso Declaration, Exhibit M). The September 18, 2007 document characterized by Plaintiff as a "Plan of Care," was a benefit eligibility assessment, not a Plan of Care. (Jackling Declaration, Exhibits Z and AA).

The letter at Statement 21, dated October 7, 2007, does not reference either a benefits eligibility assessment or Plan of Care. (Grasso Declaration, Exhibit N).

Plaintiff never permitted a functional assessment in response to the letter dated December 7, 2011, set forth in Statement 26. In addition, the letter referred to in Statement 26 advises that Brighthouse sought to schedule a benefits eligibility assessment. (Grasso Declaration, Exhibit Q). It advises that "We will assume the cost of this functional assessment and the development of a Plan of Care," but never advises that it will have the Plan of Care prepared. (Grasso Declaration, Exhibit Q).

(Def.'s Reply ¶ 40.) Plaintiffs' objection does not raise a material issue of fact precluding summary judgment.

41. On August 28, 2014, Brighthouse issued another letter to Plaintiff, affirming Brighthouse's position set forth in the July 7, 2014 letter. (Grasso Declaration, ¶39, and Exhibit Y).

42. On September 26, 2014, Plaintiff submitted a twenty six page fax to Brighthouse, supposedly containing Proof of Loss documentation supporting Plaintiff's claim for aide services provided by uncertified caregivers from December 2000 to November 26, 2013. (Grasso Declaration, ¶¶40 and 41, and Exhibit Z).

43. Included in Plaintiff's September 26, 2014 fax were:

a. A letter from Plaintiff, advising that his proof of payment for the housekeeping services consisted of medical deductions on his income tax and withdrawals from investment accounts, and states "This is probably all of the information I can provide."

b. Notes prepared by Plaintiff, dated September 26, 2014.

c. An Aide Care Plan, prepared by VNS of Rochester, covering the time period from August 10, 2001 to October 10, 2001, which states primary purpose was providing home health aide services, and indicating homemaker services were to be provided as time allowed (duplicates included).

d. Healthcare Practitioner Statement with an illegible date, but with a fax header dated September 28, 2001, specifying that home health aide services were necessary, but not specifying homemaker services were necessary.

e. Healthcare Practitioner Statement dated November 30, 2001, indicating home health aide and physical therapy services were necessary, but not indicating homemaker services were necessary.

f. "September 24, 2016" Letter from "Carolyn Dieter" to "Tom Jackling, "purportedly attaching a "Word Doc" for "medical expenses claimed for tax year through 2013," and containing entries for the years 2000 to 2013, with a fax header dated September 26, 2014.

g. September 26, 2014 letter from "Lisa Sacco" to "Tom Jackling, regarding "the amount of money transferred to your bank account," and listing entries for the years 2000 through 2014.

h. Tricare Explanation of Benefits for services from October 30, 2000 to October 31, 2000.

i. A page including a description of Medicare Benefits for services received August 8, 2001.

j. A prescription, apparently signed by a Dr. James, dated October 30, 2000, containing the note: "I hereby recommend (sic) home care service for this patient."

k. Lifetime Care Aide Care Plan, with an illegible date.

l. Visiting Nurses Service Aide Care Plan for the period from July 5, 2012 to September 2, 2012.

m. September 28, 2001 Letter from M. Jackling to "Ms. Ling" of Brighthouse, seeking waiver of premium and "reimbursement for home care," while noting that it had been explained that they would have to bring in a health care professional, and not be the care-giver "myself."

n. January 23, 2002 Letter from Visiting Nurse Service, stating Martha Jackling was a patient, with services from August 10, 2001 to October 24, 2001, and received visits from Skilled Nurses, Physical Therapists, and Home Health Aides.

o. Lifetime Care Authorization/Acknowledgement Form, signed November 8, 2013.

p. September 11, 2001 prescription for "home care for next 6 weeks," from Lukasz Curylo, M.D.

q. Lifetime Care Aide Care Plan, dated January 28, 2014.

r. September 28, 2001 claim form, signed by Martha A. Jackling, seeking waiver of premium.

s. June 12, 2001 letter from Stephen B. James, D.O. to "Whom it May Concern," recommending a TENS unit for Martha A. Jackling.

t. September 28, 2001 Fax Cover Sheet from Plaintiff to Brighthouse.

u. Visiting Nurse Service Facility Discharge Home Care Plan, dated July 19, 2013, regarding the following services: skilled nursing, occupational therapy, physical therapy and "falls prevention program" is circled.

v. Undated, handwritten chart, with abbreviations and codes. (Grasso Declaration, Exhibit Z).

Plaintiff responded: "Admitting to the fact that there is documentation that was provided. However, some of the conclusions set forth, for example, in 43 D and 43 E regarding not specifying homemaker services were necessary are not or dispute effect that would require a trial." (Pl.'s Resp. ¶ 43.)

Defendant replied:

Brighthouse refers to Grasso Declaration, Exhibit Z, Pages 7 and 8, which Defendant claims speak for themselves. Further, Defendant says that on both forms, there is a space allowed for homemaker services under "Type of Recommended Care, Frequency and Duration," and on neither form is "homemaker services" checked as a type of recommended care.

As the documents do in fact contain spaces for homemaker services, Plaintiff's contention is incorrect. Therefore, Plaintiffs' objection does not raise a material issue of fact precluding summary judgment.

44. On October 7, 2014, Brighthouse wrote to Plaintiff, affirming that the Policy did not provide coverage for the services of uncertified, privately hired care givers, advising Plaintiff that the required documentation for a claim to be considered had not been provided, and

23

again detailing the required documentation. (Grasso Declaration, ¶42, and Exhibit AA).

45. Plaintiff had also sought payment for the services of home health care aides, provided by ComforCare Senior Services, to Mrs. Jackling while she was hospitalized from May 5, 2014 until her death on May 18, 2014. (Grasso Declaration, ¶44, and Exhibits AA and BB).

46. Brighthouse denied coverage for the services of home health care aides when Mrs. Jackling was in the hospital from May 5, 2014 to May 18, 2014, on the basis that the services were not provided in the home, as required by the Policy, and otherwise were not covered by the Policy. (Grasso Declaration, Exhibits AA and CC).

Plaintiff responds: "Coverage under alternate plan of care." This brief, unsourced statement does not rebut the assertion. Plaintiffs' objection does not raise a material issue of fact precluding summary judgment.

47. On November 13, 2014, Plaintiff wrote to Brighthouse, advising that he believed it provided Brighthouse with all of the documentation it needed, in part because "[a]s far as the aids (sic), no license is required and therefore there is no record required." (Grasso Declaration, ¶43, and Exhibit BB).

Plaintiff responded, "Plaintiff did submit all documents required." (Pl's Resp.¶ 47.) The assertion at issue here is whether Plaintiff sent Brighthouse a letter on November 13, 2014, including the aforementioned quote, an assertion that Plaintiff did not address. The lack of any citation to admissible evidence undermines Plaintiff's contention. Plaintiffs' objection does not raise a material issue of fact precluding summary judgment.

48. On December 22, 2014, Brighthouse wrote to Plaintiff, affirming Brighthouse's position regarding both the services of uncertified, privately hired persons and the certified Home Health Aides whose services were provided while Mrs. Jackling was hospitalized. (Grasso Declaration, ¶46 and Exhibit CC).

49. On April 17, 2017, Plaintiff's prior counsel submitted documents to Brighthouse including:

24

a. A letter purported from Mrs. Jackling's uncertified service provider from 2000 until 2011, Mary Clark, dated May 2011.

b. Handwritten calendars for the years 1999 through 2011, apparently indicating the days care was provided to Mrs. Jackling.

c. A "worksheet" of activities (previously provided in September 2014).

d. Personal Ledger for the years 1999-2000.

e. Personal Ledger for the years 2011 to 2012.

(Grasso Declaration, ¶47 and Exhibit DD).

Plaintiff responds, "Plaintiff admits this counsel interacted with the Brighthouse, however essential documents between 2014 and 2017, where from the statements of material facts, and will be included in the counter statement of facts, including Brighthouse, agreeing to arbitration for claims in September, 2016, (sic)." (Pl's Resp. ¶ 49.) Besides being incomprehensible, Plaintiff's response fails to cite to any specific documents which could have helped in deciphering the objection. Plaintiffs' objection does not raise a material issue of fact precluding summary judgment.

50. Brighthouse responded to Plaintiff counsel's April 17, 2017 letter on May 4, 2017, reaffirming that it had not received sufficient proof of loss regarding a covered claim. (Grasso Declaration, ¶48 and Exhibit EE).

51. On May 17, 2017, claimant and Brighthouse entered into a Tolling Agreement, which extended the time to file legal proceedings by one year, to May 16, 2018. (Grasso Declaration, ¶ 49 and Exhibit FF).

52. The Plaintiff's prior counsel drafted the Tolling Agreement. The Tolling Agreement does not revive time barred claims. The Tolling Agreement provides: "This Agreement shall not revive any claims or causes of action barred as of May 17, 2017 by virtue of any applicable period of statute of limitations or repose." (Grasso Declaration, ¶ 49 and Exhibit FF).

53. On May 16, 2018, Brighthouse consented to extend the Tolling Period by 30 days. (Grasso Declaration, ¶50 and Exhibits FF and Exhibit GG). There were no further extensions of the Tolling Agreement.

54. On October 7, 2017, Plaintiff's prior counsel submitted documents to Brighthouse purportedly in support of the Plaintiff's claim, which consisted of unlabeled personal ledgers. (Grasso Declaration, ¶ 49 and Exhibit FF).

### D. The Prior Arbitration

55. Prior to commencing this Action, Plaintiff commenced an arbitration proceeding before the Arbitration Association of America, Case No.01-18-0001-9515, on June 18, 2018 ("Arbitration"), regarding the same claims as at issue here. Prior to the issuance of a decision on Brighthouse's Motion for Summary Judgment, the Plaintiff withdrew the matter from arbitration on September 9, 2019. (Declaration of Jeffrey L. Kingsley, declared December 21, 2021 ("Kingsley Declaration"), ¶4 and Exhibit C).

Plaintiff admits to the withdrawal, but states:

However, the characterization of the with decision to withdraw as one related to a potential determination in the favor of Brighthouse is incorrect as set more clearly forth in the Declaration of William Jackling, Mr. Jackling suffered from a brain aneurysm and needed to pause the stressors, including the case that were affecting him.

(Pl. Resp. ¶ 55.) Defendant replied:

Plaintiff does not cite any specific or admissible evidence supporting this response. Further, Brighthouse objects to the response on the basis that it improperly characterizes Brighthouse's Statement 55. Brighthouse's statement simply states that the Arbitration was withdrawn prior to the issuance of a decision regarding Brighthouse's Motion for Summary Judgment. It makes no reference to determinations in the Arbitration.

Plaintiff is not objecting to the assertions being made by Defendant; rather,

Plaintiff attempts to explain his reasoning surrounding the withdrawal. Plaintiffs'

objection does not raise a material issue of fact precluding summary judgment.

### E. The Present Lawsuit

56. This Action was commenced on July 9, 2020, by the filing of a Summons with Notice, in New York State Supreme Court, Monroe County under Index No. E202004474 ("State Court Action"). (Kingsley Declaration, ¶2 and Exhibit A). Plaintiff subsequently filed a Complaint.[1] (Kingsley Declaration, ¶2 and Exhibit A). Brighthouse timely removed this Action on October 27, 2020.

57. The Complaint seeks to recover "Community-based Care Benefits" services provided to the Plaintiff's decedent by uncertified and unlicensed individuals. (Kingsley Declaration, Exhibit A, ¶ 26-28).

Plaintiff responds with: "Admit to seeing (sic) seeking recovery disputes. The characterization that fits the undisputed material effects. This is a disputed fact."

(Pl's Resp. ¶ 57.) Defendant replied:

> Plaintiff does not cite any specific or admissible evidence supporting this response. Brighthouse objects to Plaintiff's Response to the extent that it unclear what "Admit to seeing (sic) seeking recovery disputes" or "Admit to seeking recovery disputes" means. Brighthouse also objects to Plaintiff's Response to the extent it is unclear what "[t]he characterization that fits the undisputed material effects" means. Further, Brighthouse objects to the response on the basis that it states "This is a disputed fact," but does not set forth any basis on which the fact is disputed. Brighthouse refers to the Complaint, which speaks for itself.

(Def.'s Reply ¶ 57.) It is not clear to the Court what Plaintiff is trying to assert. This is yet another incomprehensible objection. As Plaintiff has not described or provided an example of what the dispute is, Plaintiffs' objection does not raise a material issue of fact precluding summary judgment.

58. The Complaint alleges causes of action sounding in Breach of Contract (First Cause of Action), "Bad Faith Breach of Contract" (Second Cause of Action), Fraud (Third Cause of Action), and Violation of N.Y. General Business Law § 349 (Fourth Cause of Action). Plaintiff seeks

---

[1] The complaint is verified by William T. Jackling and sworn to on July 27, 2020. (Compl. at 13, ECF No. 1-1.)

compensatory, punitive and treble damages. (Kingsley Declaration, Exhibit A).

59. In the Complaint, "Plaintiff contends that Defendants fraudulently sold the Policy to the Plaintiff knowing it would not pay the contractual benefits" and "knowingly misrepresented to Plaintiff when she purchased the Policy that Defendants would fully pay for coverage pursuant to the Policy when it knew it would not do so." (Kingsley Declaration, Exhibit A, ¶¶2 and 72).

60. Plaintiff's allegations regarding bad faith, fraud and General Business Law 349 causes of action are "upon information and belief," and do not cite any specific actions or representations by Brighthouse upon which the causes of action are based. (Kingsley Declaration, Exhibit A, ¶35).

61. Plaintiff also alleges, upon information and belief, that there is "at least one class action suit for failure to pay pursuant to a long term care policy," but does not identify any such class action suit, and does not allege any specific consumer oriented practices. (Kingsley Declaration, Exhibit A, ¶72).

62. The Complaint alleges because Brighthouse's breach of contract, "Plaintiff was required to sell assets totaling $1,300,000," and lost investment income. (Kingsley Declaration, Exhibit A, ¶19).

63. The Complaint also seeks to recover for the services of home health aides provided to Mrs. Jackling when she was hospitalized from May 5, 2014 to "May 7, 2014" (sic). (Kingsley Declaration, Exhibit A, ¶¶29-33).

64. On March 11, 2021, Brighthouse moved to dismiss defendants named as "Travelers," "MetLife," "Genworth" and "Brighthouse Financial." ECF No. 16. Brighthouse's Motion to Dismiss those defendants was granted on October 18, 2021. ECF No. 34.

65. Plaintiff served responses to Brighthouse's First Set of Interrogatories on or about March 31, 2021. (Kingsley Declaration, Exhibit E). In response to an interrogatory asking Plaintiff to "identify with particularity the basis for Plaintiff's claim that 'defendants wrongfully denied benefits on the grounds that care providers were not licensed or certified, including a statement of whether care providers at issue were licensed or certified,'"

Plaintiff responded:

    ANSWER: The care providers for which Plaintiff seeks payment reimbursement for were not licensed. The benefits were

wrongfully denied because the policy in question in this lawsuit specifically provides for payment and reimbursement of Aide I homemakers/caretakers/personal assistants, which do not require licensing in New York State. No where (sic) in the policy does it expressly require that an Aide I homemaker/caretaker/personal assistant must be licensed.

(Kingsley Declaration, Exhibit E, ¶4).

**F. Plaintiff Concedes the Service Providers Were Uncertified.**

66. In both the present action and the Arbitration, Plaintiff admitted at deposition that the services providers for whose services he is seeking recovery were uncertified. (Kingsley Declaration, Exhibit E, Exhibit G, PP 65-86, 151-154).

67. He also testified that he could have retained certified persons to provide the services for Mrs. Jackling, but chose not to. (Kingsley Declaration, Exhibits G, PP 151-54).

Plaintiff states:

Dispute. Disputed testimony does not state that Mr. Jackling could have obtained a license individual to provide home care services. This is a critical issue for trial. Instead, the testimony states that the individuals that Mr. Jackling had at the home who provided medical care—that were paid for by the other healthcare insurance agencies were providing directly medical care that required medical licenses. This characterization is incorrect and is unsupported by the testimony provided for this position.

(Pl's Resp ¶67) Defendant responds: "Plaintiff does not cite any specific or admissible evidence supporting this response. Further, the testimony cited, at Kingsley Declaration, Exhibits G, PP 151-54, does not reference medical care. Brighthouse refers to the testimony referenced, which speaks for itself." (Def.'s Reply ¶ 67.)

In reviewing the testimony cited, the Court notes the following:

Q -- why didn't you hire a certified home health caretaker as opposed to relying on Mary Clark?

A Why? I had somebody. She was capable. She knew the job and I had - - all the licensed people I needed were paid for by my insurances.

(Kingsley Decl., Ex. G at 151.) Plaintiffs' objection does not raise a material issue of fact precluding summary judgment.

68. Plaintiff testified that Mary Clark was the uncertified service provider for Mrs. Jackling from 2000 until 2011, but did not clearly identify any uncertified care provider following the end of Ms. Clark's services to Mrs. Jackling. (Kingsley Declaration, Exhibits F and G).

Plaintiff disputes the assertion, stating: "Dispute. Regardless of the recollection of Mr. Jackling on the date of the deposition, the care was for provided to Mrs. Jackling and he's seeking reimbursement." (Pl's. Resp. ¶ 68). Plaintiff's response does not address Defendant's assertion that Mr. Jackling did not identify any uncertified care provider following the conclusion of Ms. Clark's service to the Jacklings. Plaintiffs' objection does not raise a material issue of fact precluding summary judgment.

**G. Plaintiff's March 18, 2021 Documents to Brighthouse.**

69. On March 18, 2021, Plaintiff's counsel submitted a letter with enclosures to Brighthouse. (Kingsley Declaration, Exhibit D). The enclosures included:

a. A List of Assets, dated April 19, 2019, which Plaintiff purported was submitted in the Arbitration.

b. A copy of a letter dated September 24, 2016 (sic), purportedly from Carolyn A. Dieter to Plaintiff regarding "Medical Expenses," which purports to list the medical expenses claimed on the Plaintiff's taxes from 2000 to 2013.

c. A copy of a letter dated September 26, 2016, purportedly from Lisa Sacco to Plaintiff regarding money transferred to Plaintiff's accounts.

(Kingsley Declaration, Exhibit D).

70. Upon comparing the letter dated September 24, 2016 (sic) from Carolyn Dieter to Tom Jackling submitted to Brighthouse on September 24, 2016 to the copy of purportedly the same letter submitted by Plaintiff

with his counsel's March 18, 2021 letter, it is evident that they are not the same document. (Grasso Declaration, Exhibit Z, Page 8 and Kingsley Declaration, Exhibit D).

71. During deposition, Plaintiff testified that the document submitted by [sic] on September 26, 2014, came from "his accountant," "Mr. Walker," and that Carolyn A. Dieter was "one of the girls that works there." (Kingsley Declaration, Exhibit E, P 230).

72. When Plaintiff was questioned regarding the altered document at deposition, he admitted under oath that he altered the document to "put it on a chart," with the help of a friend, "a retired judge." (Kingsley Declaration, Exhibit E, PP 232- 235). Mr. Jackling testified:

Q: Can you tell me what this document is?

A. Yeah. Those are my unreimbursed medical expenses.

Q. Okay. And who is --- who authored this document?

A. It came from my accountant.

Q. Who is your accountant?

A. Mr. Walker.

Q. And who's Carolyn Dieter?

A. She's one of the girls that works there.

Q. Is she still there?

A. Yes. I talked to her yesterday.

***

Q. I'm going to show you what's been marked as Exhibit 16.

A. Did we change it? It should be the same. Do you want me to compare it, is that what you want me to do?

***

Q. I'm just asking you to take a look at that. Do you see that?

A. Yes.

Q. It says September 24, 2016.

A. Yes.

Q. Is that the same as the one we just talked about?

A. It looks the same.

Q. Subject is medical expenses?

A. Right.

Q. Medical expenses?

A. Right.

Q. Same from Carolyn Dieter to Tom Jackling?

A. Yes.

***

Q. Same exact thing as described in the prior exhibit?

A. Right. Remember…

Q. But here in Exhibit 16, it seems to be a chart as opposed to a breakdown?

A. Yeah. This is the first one I sent. This one was done later on.

Q. That one was done later on, past 2016?

A. I've got to see it. Yeah. I put it on a chart.

Q. Did you put this on a chart? Because if you take a look at it, that chart in Exhibit 16 looks a little bit tilted if you don't mind.

A. Yeah. The damn guy I used for this is not too good.

Q. What guy did you use for this?

A. Just a friend of mine, a retired Judge.

Q. A retired Judge.

A. Yeah.

Q. Did he help put this chart on?

A. No. I had this and all he did was take this and I had these two and he did them for me, made the chart.

Q. So you made the chart and you submitted that?

A. I don't know if I submitted it. I already submitted it.

Q. Did you ever inform Brighthouse that you had any help submitting a medical chart by a Judge?

A. Why would I tell them that?

Q. Because Exhibit 16 would indicate it's from Carolyn Dieter when, in fact, the document was doctored and modified by your Judge.

A. She just sent me the tax returns and I put it on this form. You questioned how I wrote those on here. That was just making it more legible.

Q. But Carolyn Dieter didn't make that chart, did she?

A. No. She made this one.

Q. But her name is on Exhibit 16, isn't it?

A. It's on both of them. It's the same chart. We just added these. I mean, there's nothing different, is there?

(Kingsley Declaration, Exhibit G, pp. 232-235).

73. Plaintiff then declined to identify the retired judge, requiring Brighthouse to file a motion to compel, which was granted by this Court. (Kingsley Declaration, Exhibit G, pp. 233-234).

Plaintiff disputes this assertion, stating "Dispute. Although it is correct that Brighthouse filed a Motion to Compel. That was that Mr. Jackling provided the name of the individual to his attorney two days after he learned of the request. However, the attorney may not have communicated the name to opposing counsel." (Pl's Resp. ¶ 73.) Plaintiff gives no evidence to show that this occurred. The relevant testimony is as follows:

Q And what's the Judge's name?

A I'm not telling you that. I don't have to tell you that.

MR. STERN: You have to tell him the name of the Judge.

THE WITNESS: I forgot.

BY MR. KINGSLEY:

Q You seemed like you knew the name of the Judge.

A I'm not telling you - period. So do what you want. Put me in court. Do anything you want.

***

A I'm never going to tell you - period. I'm not going to tell you. It's not any of your business. He's a friend of mine and that's it.

(Kingsley Decl., Ex. G at 235.) The testimony shows that Plaintiff was unwilling to

reveal the name of the induvial who assisted him. Plaintiffs' objection does not raise

a material issue of fact precluding summary judgment.

74. Pursuant to subpoena, Brighthouse took the deposition of Carolyn Dieter and obtained the records of her employer, Walker and Reynolds, C.P.A.'s, P.C. (Kingsley Declaration, Exhibits K and L).

75. Ms. Dieter testified that the offices of Walker & Reynolds were destroyed by fire in 2004, and it did not have any tax records regarding Plaintiff and Plaintiff's decedent from before 2003 as a result of the fire. (Kingsley Declaration, Exhibit L, PP 37-38).

76. Ms. Dieter testified that she did not prepare either of the documents submitted by Plaintiff to Brighthouse, which were purported by Plaintiff to have been prepared by her. (Kingsley Declaration, Exhibit L, PP 22-23 and 26-27). She testified that the document she prepared only included Plaintiff's medical tax exemptions from 2003 to 2013, but not for the years 2000, 2001 or 2002, and was prepared in Excel. (Kingsley Declaration, Exhibit L, PP 39-40).

77. The documents received from Walker and Reynolds, C.P.A.'s, P.C. contain a handwritten note which states "Tom to do" with reference to the years 2000, 2001, 2002 and 2003. (Kingsley Declaration, Exhibit K).

Plaintiff responded "The question of Plaintiff's credibility requires a trial. However, Plaintiff is not requesting reimbursement medical defenses [sic] for the care of Mrs. Jackling." (Pl's Resp. ¶ 77.) Plaintiff's opposition does not deal with the assertion that the documents from Walker and Reynolds had the aforementioned notes. Plaintiffs' objection does not raise a material issue of fact precluding summary judgment.

> 78. The documents received from Walker and Reynolds, C.P.A.'s, P.C. also include a printout of a document, dated September 11, 2014, regarding "William T. and Martha A. Jackling Medical Expense per Tax Return (TO)," and tax worksheets showing medical deductions for doctors' services, prescription costs, transportation and insurance premiums. (Kingsley Declaration, Exhibit K). The documents do not include information for the years 2000, 2001, or 2002. They do include 2003. (Kingsley Declaration, Exhibit K).

Plaintiff states that "the question of proof of loss is a question of fact to be determined at trial, especially here where plaintiff did not have ability to clarify the record regarding the Dieter subpoena." (Pl's Resp. ¶ 78.) Defendant replied:

> Plaintiff does not cite any specific or admissible evidence supporting this response. Plaintiff's response is not a statement of fact, but an argument. Further, the document cited was not submitted as part of Plaintiff's alleged proof of loss. Brighthouse refers to the document, which speaks for itself.

> Plaintiff's counsel was provided with the required notice regarding the subpoena. Kingsley May 6, 2022 Declaration, Exhibit C.

(Def.'s Reply ¶ 78.) Plaintiffs' objection is actually an argument rather than a statement of fact. This assertion deals with Walker's and Reynolds's documents and what they do and do not contain. Plaintiffs' objection does not raise a material issue of fact precluding summary judgment.

> 79. The documents received from Walker and Reynolds, C.P.A.'s, P.C. also include tax worksheets, which list medical deductions for doctors

and nurses, insurance premiums, prescriptions and transportation. (Kingsley Declaration, Exhibit K).

Plaintiff admits the documents exist, but states that he is not seeking medical expenses but rather the expenses related to the aides and those providing non-medical care. (Pl's Resp. ¶ 79.)

80. The September 24, 2016 (sic) letter submitted by Plaintiff to Brighthouse purportedly from Carolyn Dieter lists medical tax deductions beginning in 2000. (Grasso Declaration, Exhibit Z, page 9).

81. Brighthouse received documents from Plaintiff's prior counsel, Harter Secrest, regarding the underlying claims pursuant to an authorization executed by Plaintiff. (Kingsley Declaration, Exhibit M).

82. Included in the documents received from Harter Secrest were copies of the printout of the original email from Carolyn Dieter to Plaintiff, dated September 11, 2014, which attached a .pdf. (Kingsley Declaration, Exhibit M). It does not include information for the years 2000 to 2003. (Kingsley Declaration, Exhibit M).

83. In addition, there is handwriting on the printout of the email, indicating where deletions, alterations or additions should be made, and a handwritten sheet of paper, apparently showing a draft of how the information should be formatted. One of the alternations was to change the reference to the attachment from being in .pdf format to being in Word format. The handwritten information on the documents matches the information on the documents submitted by Plaintiff to Brighthouse. (Kingsley Declaration, Exhibit M).

Plaintiff states: "Admit that there are documents with the handwriting as for the purpose of the writing, it is a dispute of fact that requires a trial or fact to make a determination regarding the value and importance of the document." (Pl's Resp. ¶ 83). Defendants are referring to the document itself, whereas Plaintiff is making an argument. Plaintiffs' objection does not raise a material issue of fact precluding summary judgment.

84. Upon comparing the letter dated September 24, 2016 from Lisa Sacco to Tom Jackling submitted to Brighthouse on September 26, 2014

to the copy of purportedly the same letter submitted by Plaintiff with his counsel's March 18, 2021 letter, it is evident that they are not the same document. (Grasso Declaration, Exhibit Z, Page 9 and Kingsley Declaration, Exhibit D).

Plaintiff responds "Dispute. Proof of loss is a question in fact, to be determinate trial issues regarding credibility required" (Pl's Resp. ¶ 84.) Again, this is an argument rather than a statement of fact. Further, it does not address Defendant's assertion that the letters are not the same. Plaintiffs' objection does not raise a material issue of fact precluding summary judgment.

85 Included in the documents received from Harter Secrest were copies of the printout of the original email from Lisa Sacco to Plaintiff, sent to Plaintiff on September 10, 2011. (Kingsley Declaration, Exhibit M). It provides information regarding money transfers for the years 2012, 2013 and 2014. It does not include information for the years 2000 to 2011.

86. In addition, there is handwriting on the printout indicating where deletions, alterations or additions should be made, and two handwritten sheets of paper, apparently showing a draft of how the information should be formatted, and what figures should be included. They match the information on the documents submitted by Plaintiff to Brighthouse, which includes a different amount for 2012 from the original email. (Kingsley Declaration, Exhibit M).

Plaintiff contends that "Defendant's allegations regarding credibility of plaintiff requires a trial to determine the facts." (Pl's Resp. ¶ 86.) This is another argument rather than statement of fact. Furthermore, Defendant is discussing the document rather than credibility. Plaintiffs' objection does not raise a material issue of fact precluding summary judgment.

87. Brighthouse subpoenaed the documents from the successor of INVEST Financial, on whose behalf Lisa Sacco sent the September 10, 2014 email to Plaintiff. (Kingsley Declaration, Exhibit N).

88. In response to the subpoena, counsel for INVEST Financial provided to Brighthouse a printout of the original email, which matches the

information on the marked up version of the email in the Harter Secrest file, before the markups. (Kingsley Declaration, Exhibit N).

89. The September 10, 2014 email from Lisa Sacco to Plaintiff only included information for the years 2012, 2013 and 2014, and the amount listed 52 for 2012 is different from what is listed on the documents submitted by Plaintiff to Brighthouse on September 26, 2014 and March 17, 2021. (Kingsley Declaration, Exhibit N).

Plaintiff admits this, however, contends the emails are dated differently. This

does not raise an issue of material fact.

90. On September 20, 2021, William T. Jackling sent an ex parte letter to Jeffrey L. Kingsley, regarding his testimony on July 21, 2021 where he testified a "retired judge" assisted him in altering the document dated September 24, 2016, and purporting to be from "Carolyn Dieter," clarifying that the "retired judge" did not assist in doctoring or altering documents. (Kingsley Declaration, ¶10 and Exhibit I).

91. In the September 20, 2021 letter, which was sworn to by Mr. Jackling before a notary public, he states that "I met with a lawyer and was advised on how I could make my documents clearer, and I merely added a chart and totaled the numbers I received from my accountant and investment house." (Kingsley Declaration, Exhibit I).

92. On October 29, 2021, when questioned at his continuing deposition, Plaintiff continued to testify that he received the information on the altered documents, dated "September 24, 2016," and purportedly from Carolyn Dieter, from Carolyn Dieter, including for the years 2000, 2001 and 2002, despite being advised that the information was lost in a fire and that Ms. Dieter had testified that she did not create the documents at issue. Mr. Jackling testified:

A. That's my letter. Dieter letter was the one without the boxes on it.

Q. Okay.

Q. So you said Exhibit 16 is your letter. Can you explain to me what that means?

A. After we took and just put boxes around the numbers...

Q. Okay. But, the letters says – Exhibit 16 states from Carolyn Dieter, correct?

A. Yeah. The numbers all were – I didn't change anything else.

A. Well yeah, somebody sent the paperwork to me, like my attorney or anybody like that, if I want to use it and all I did was put boxes around the numbers. I didn't change anything.

Q. Wouldn't you agree with me that sending a letter dated September 24, 2016, with regards to Carolyn Dieter, that Brighthouse would believe that that was coming from Carolyn Dieter?

…

A. I wouldn't – I don't have any idea what they would believe.

Q. Okay. So you didn't provide any additional information indicating that you altered Exhibit 16 in any way?

A. No. You don't understand. I gave them the original letter, but it just didn't have the lines around the boxes like this here.

A. If you go look in the evidence I presented, both letters are in there, okay?

A. I wasn't trying to change anything.

***

Q. All right. Exhibit 18 is the one that does not have that chart that we talked about previously. Is Exhibit 18 the one that you received from Carolyn Dieter?

A. Yes.

(Kingsley Declaration, Exhibit H, PP 22-24).

93. Plaintiff also admitted that the handwriting on certain of the documents produced by Harter Secrest pursuant to authorization (Kingsley Declaration, Exhibit M) was his handwriting. (Kingsley Declaration, Exhibit H, P 61).

94. When advised that Carolyn Dieter testified she did not author either of the two letters submitted by Plaintiff to Brighthouse, and that Walters and Reynolds C.P.A.'s, P.C.'s offices were destroyed by fire, and as a result they did not have Plaintiff's tax records prior to 2003, and being shown the email September 11, 2014 from Carolyn Dieter to Plaintiff, only listing the years 2003 through 2013, and including

plaintiff's handwritten cross-offs and notes regarding the years 2000, 2001 and 2002, Plaintiff testified:

* * *

Q. Okay. How would she be able to produce any documents evidencing from 2000 to 2003? Or 2002. Sorry. 2002.

A. Take it off my income tax.

Q. Okay.

A. They still have my income tax all the way back.

Q. Okay. With respect to receiving the email.

A. Right.

Q. From September 11th.

A. Right.

Q. 2014.

A. Right.

Q. She indicated that she only had records from 2003.

A. Where do you think I got this from?

* * *

Q. Okay. So in her email [dated September 11, 2014] she was only able to provide you with tax return records from 2003 to 2015.

A. Right.

Q. But then there is a letter –

A. But –

Q. I am just asking.

Q. Then there is a letter two years later [dated September 24, 2016] that encloses the 2000, 2001 and 2002 records.

A. That's right. Because I went and got them from her.

Q. Okay. You went and got them from her?

A. Yeah. Ask her.

Q. I did.

A. I don't care.

* * *

Q. Okay and in that last e-mail [September 11, 2014], Exhibit 19, I believe.

A. Yeah.

Q. The medical expenses says from 2003 to 2013, but then it was handwritten over it 2002 (sic) to 2013. Do you see that?

A. Yeah. I went back and got them.

Q. So you wrote 2000, right? Is that your handwriting?

A. It looks like it, yeah.

(Kingsley Declaration, Exhibit H, PP 60- 64).

95. With regard to the documents Plaintiff submitted to Brighthouse and purported to be from "Lisa Sacco," Plaintiff testified:

Q. Okay. You put the chart on this document? You placed the chart on it?

A. Yes. The lines. I didn't alter the documents.

* * *

(Kingsley Declaration, Exhibit H, P 66).

96. When shown that a copy of an email Lisa Sacco sent to Plaintiff on September 10, 2014, that was included in the Harter Secrest materials, only listed amounts for the years 2012, 2013 and 2014, and had handwritten notes and cross-outs on it (Kingsley Declaration, Exhibit M), Plaintiff admitted the cross-outs and notes were in his handwriting:

Q. Is that your handwriting?

A. Yes, it is.

Q. Do you have any idea why you wrote that there?

A. Well, I probably. I think I had Persian before. Do you follow me?

* * *

Q. I am going to ask it again. Do you know what that handwriting on Exhibit 21 – can you give us some context as to why you wrote that?

Plaintiff's counsel: That is 22, by the way.

Q. I am sorry. 22.

A. Well, it looks like where the money came from, I was searching for it.

* * *

Q. But, Lisa only provided you with three years. Where did the rest of the documents come from or where the rest of yours come from?

A. Persian?

Q. From what?

A. Persian.

Q. Can you explain what Persian is?

A. It is a clearing house.

Q. Can you give me the full name of it?

A. Well, it is like JP Morgan.

Q. Okay.

A. Training house.

Q. Did you speak to an individual?

A. No. Never did.

Q. How did you get the records?

A. Either they sent it to me or gave it to me over the phone.

Q. Do you have those records in your file?

A. Not anymore.

(Kingsley Declaration, Exhibit H, PP 73-74)

97. Plaintiff's testimony could not account for the handwritten notes that are dated September 26, 2014, and list the same information as Grasso Declaration, Exhibit Z, and Kingsley Declaration, Exhibit D. Plaintiff testified:

Q. Okay. And the handwriting seems to list out the amount of money transferred to your bank account is as follows. Do you see that in Exhibit 23?

A. Yes.

Q. Okay. And that is the exact same language in Exhibit 21, the letter?

A. Yes.

Q. Why would this document be in the production from Harter Secrest in the file?

A. I have no idea.

Q. With the exact same letter and date?

A. I have no idea, unless they wrote it to have – to give to me to send to my broker to have it put on there.

Plaintiff's counsel: Don't guess. I mean, if you know.

Q. If you know, you know. I don't want you to guess. Your counsel is absolutely right.

A. No. There are lots of things they sent to me and said. Plaintiff's counsel: You answered the question.

(Kingsley Declaration, Exhibit H, PP 80-82).

## BRIGHTHOUSE'S REPLY TO PLAINTIFF'S COUNTERSTATEMENT OF FACTS

1. William Jackling and Martha Jackling obtained a Long Term Care Policy with the intention of receiving services that their other insurance company did not provide. Jackling Declaration 1-20. (Exhibit A, B, and E are documents that were provided in the Defendant's Statement of Facts)

Defendant contends that "Brighthouse cannot admit or dispute the Plaintiff's intentions. Exhibits A and B to the Jackling Declaration do not support this statement, and there is no Exhibit E." (Def's Reply ¶ 1.) The exhibits cited by Plaintiff do not address any of Plaintiff's contentions. Unfortunately, Plaintiff does not provide adequate citations, quotes, or any other identifying information for the Court to use. This contention does not create a material issue of fact.

2. The Jacklings desired a policy that was consistent with the 3/6/50 Policy. Exhibit C. Jackling Declaration 6-7.

Defendant states that it is unable to admit or dispute the intentions of Plaintiff. (Def's Reply ¶ 2.) The Jacklings may have desired a similar policy to what they had, however the evidence they cite to do not support their statement. Furthermore, it does not create a material issue of fact.

3. Travelers informed William Jackling of an error that it made in the calculation of the premium. Jackling Declaration 21. (Exhibit F).

Defendant states:

Dispute. Plaintiff's characterization is incorrect. Brighthouse refers to the document, which speaks for itself. The reference document advises that the error was with regard to available benefits, and that the policy would be corrected with additional premium. It is also wholly irrelevant to the present matter.

(Def's Reply ¶ 3.) The error outlined by Plaintiff is unrelated to the issues of this case. This error is a premium payment issue, rather than an issue surrounding the aides. Plaintiff's assertion does not create a material issue of fact precluding summary judgment.

4. Plaintiff Martha Jackling became ill in 2000 and did not get better. (Jackling Declaration 22-54).

Defendant states:

> Brighthouse can neither admit nor deny. In addition, it objects to statement as ambiguous. For purposes of the present motion, Defendant admits that Mrs. Jackling was Chronically Ill Individual pursuant to the terms of the Policy beginning as of at least August 2001.

(Def's Reply ¶ 4.) While ambiguous, the assertion does not create a material issue of

fact.

> 5. Travelers admitted that Mrs. Jackling had reached her lifetime waiver timeframe in its January 19, 2002, letter where it waived premiums. (See Jacking Declaration Exhibit L).

> Defendant states:

> Brighthouse refers to the document, which speaks for itself. It otherwise objects to the statement on the basis of ambiguity, and the absence of a definition for "lifetime waiver timeframe." It disputes it admitted anything. (Jackling Declaration, Exhibit L). Plaintiff does not cite specific or admissible evidence regarding Brighthouse's alleged admission that "Mrs. Jackling had reached her lifetime waiver timeframe."

(Def's Reply ¶ 5.) Exhibit L to Jackling's declaration is a letter from Susan Decapua,

Senior Benefit Analyst, dated June 17, 2002, and states in relevant part: "As per my

conversation with Mr. Jackling earlier today, you are eligible for Premium Waiver

08/25/01 through 10/25/01." (Jackling Decl. Ex. L at 1, ECF 64-11.) Plaintiff does not

cite to any evidence where Defendant claimed the *lifetime* wavier had been reached.

This statement does not raise a material issue of fact precluding summary judgment.

> 6. In late December of 2013, Mr. Jackling had called MetLife in order to discuss Martha's claims and spoke with the president's secretary. She told him that their offices were closing down because of the ice storm and after explaining my situation, she told him "You are approved, don't worry about it." Jackling Declaration 55.

> Defendant states:

> Defendant disputes and objects to Plaintiff's Fact 6 on the basis that it is hearsay, fails to identify the President or the President's Secretary, the basis for her authority to make such a statement, or how the matter

could have been fully assessed while she was trying to close down the office due to an ice storm. Defendant further objects on the basis that it is a self-serving statement, insufficient to defeat summary judgment. Plaintiff does not cite specific or admissible evidence in support of their [sic] statement.

(Def's Reply ¶ 6.) Plaintiff's statements here are hearsay, and without additional

admissible evidence, do not create a material issue of fact.

7. On February 4, 2014, MetLife had written a letter stating that they had completed their thorough review and they were turning down Comforcare Senior Services Rochester-East because they were a non-licensed agency. (See Jackling Declaration Exhibit M) Jackling Declaration 56.

Defendant responds:

Defendant refers to the document cited, which speaks for itself. Defendant objects on the basis that the fact set forth is wholly irrelevant to the present matter. Defendant also notes that it ultimately approved benefits provided by ComforCare Senior Services employees on February 20, 2014. (Grasso Declaration, Exhibit V, Page 146).

(Def's Reply ¶ 7.) This does not create a material issue of fact as ComforCare was

approved 16 days after the letter was sent. The fact that 16 days elapsed between the

denial letter and ComforCare being approved is inconsequential to the issues in this

case. Therefore, it does not create a material issue of fact.

8. On May 18, 2014, Martha Jackling passed away. Jackling Declaration 57. Exhibit N.

9. On April 13, 2015, William Jackling was informed by MetLife that he did not yet have the right to arbitrate the manner [sic] regarding any of the five claims, because he was never notified by the New York State Partnership that Long Term Care benefits were denied in error. (Exhibit D) (Jackling Declaration 62.)

Defendant responds:

Defendant disputes Plaintiff's Fact 9, and its characterization. It further refers to the document, which speaks for itself. Brighthouse referenced the optional (i.e. voluntary) arbitration provision in the Policy, and

stated that the plaintiff could not seek arbitration if the New York
Partnership for Long Term Care, an entity outside of Brighthouse's
control, determined that benefit eligibility was denied in error, and
referred to the policy. Brighthouse did not inform Plaintiff either that
he did not have the right to arbitrate, or state whether the New York
State Partnership notified him of anything. Further, the letter does not
advise that Plaintiff could not bring legal action against Brighthouse,
that arbitration was mandatory, or that arbitration was available for
anything other than denial of benefit eligibility.

(Def's Reply ¶ 9.) The letter does not preclude Plaintiff from arbitration. Plaintiffs'

assertion does not raise a material issue of fact precluding summary judgment.

10. Based on the letter, William Jackling reached out directly to the New
York State Partnership regarding his claims, arbitration, interest, and
licensing. (Jackling Declaration 62-65.)

Defendant responds:

Brighthouse can neither admit nor dispute whether or why William
Jackling reached out to the New York State Partnership for Long Term
Care. Plaintiff does not cite specific or admissible evidence in support of
their statement.

(Def's Reply ¶ 10.) This assertion does not create a material issue of fact.

11. He received a letter in response from Mr. Cummings dated August
24, 2015, with an Insurer Participation Agreement attached (Exhibit P).
In the letter, the Partnership informed Mr. Jackling that they cannot
investigate this matter if Martha is no longer alive. They referred me to
the Department of Finance. (Jackling Declaration 64).

Defendant states:

Brighthouse refers to the document attached as Exhibit P, which speaks
for itself, but is incomplete because it does not include the Insurer
Participation Agreement referenced in Jackling Declaration 64. Exhibit
P advises Plaintiff: "If you are seeking arbitration as a benefit of your
NYS Partnership Policy, arbitration must be ordered by the Program."
It does not advise that arbitration is mandatory, that litigation could not
be brought against Brighthouse without seeking arbitration, or that the
New York State Partnership had to give permission to Plaintiff to sue
Brighthouse. Plaintiff does not cite specific or admissible evidence.
Notably, Exhibit P does not advise anywhere that the New York State
Partnership could not investigate the matter because Mrs. Jackling was

no longer alive, or that investigation was required. Instead, it referred
to the New York State Department of Financial Services for questions
regarding claim handling.

(Def's Reply ¶ 11.) Plaintiff's assertions do not create a material issue of fact as the

exhibit cited as evidence directly contradicts his statement.

> 12. Mr. Jackling subsequently found out that the insurance company
> and its predecessors had never reported to the New York State
> Partnership that it had denied benefits to Martha Jackling until 2015.
> (Exhibit Q).

> Defendant objects:

> Brighthouse disputes Plaintiff's Fact 12. As set forth in the December
> 15, 2021 Declaration of Leanne Grasso ("Grasso Declaration"), ¶¶37-39,
> Brighthouse did not deny benefits to Mrs. Jackling prior to 2014 because
> Plaintiff would open claims, but not pursue them. The claims were
> closed, not denied, and no reporting was required. Further, Plaintiff
> does not cite specific or admissible evidence in support of their [sic]
> statement.

(Def's Reply ¶ 12.) Plaintiff does not provide evidence to support his assertions.

Although he cites to "Exhibit Q," that is a 17-page document and Plaintiff fails to cite

to specific portions of that document in support of his claim. Further, proof that a

denial was sent to the New York State Partnership on a particular date does not prove

that it was not sent earlier. Plaintiff has not raised a material issue of fact.

> 13. Mr. Jackling reached back out to MetLife to provide the information
> that was received from the New York Partnership and inform them
> about his intent to arbitrate in February 2016. (Jackling Declaration 65)
> (Exhibit R)[sic].

> Defendant states:

> Brighthouse can neither admit nor dispute Plaintiff Fact 13. It also
> notes that Jackling Declaration 65 refers to Exhibit Q. Jackling
> Declaration 66, which refers to Exhibit R, states: "On February 11, 2016,
> the Estate of Martha Jackling's attorney, David Kaplan, sent a request
> to arbitrate through certified mail. (Exhibit R)." Neither Exhibit Q nor

Exhibit R are a letter from attorney David Kaplan requesting arbitration.

(Def's Reply ¶ 14.) Exhibit Q consists of correspondence addressed *to* Jackling. (Jackling Decl. Ex. Q, ECF No. 64-16.) Exhibit R is a February 11, 2016, letter from Jackling's attorney to MetLife Insurance Company stating, in relevant part, "Mr. Jackling hereby elects to use arbitration for all unresolved claims dating back to 2000 that are pending on the above-referenced policy.... Please let me within 10 days the next steps that must be taken to proceed with arbitration." (Jackling Decl. Ex. R at 1, ECF No. 64-17.) Despite this discrepancy, the parties eventually agreed to arbitration, as discussed below. Additionally, when the case at hand was referred to the Court, the Court granted a motion to opt out of Alternate Dispute Resolution, (ECF No. 20), precisely because of the large amounts of fruitless arbitration in this case. In its decision, the Court wrote:

> Pursuant to Rule 2.2(C) of the ADR Plan, a party seeking relief from ADR must set forth the reasons why ADR has no reasonable chance of being productive. Courts have declined motions to opt out of ADR on the basis that the parties have previously been unsuccessful in settlement negotiations by noting that skillful mediators outside of formal litigation proceeds can be of value. *Millennium Pipeline Co., LLC v Certain Permanent & Temporary Easements*, No. 07-CV-6560L, 2012 U.S. Dist. LEXIS 201248, at *3 (WDNY Sep. 6, 2012).
>
> In the present case, the parties have attempted settlement negotiations with an arbitrator and no resolution could be reached. This differs from *Millennium Pipeline Co.* because the parties here have engaged in extensive mediation sessions with an arbitrator, ultimately resulting in Plaintiff withdrawing his claims before the arbitrator could render a decision and refiling the case at hand. Based on the parties' previous unsuccessful attempts at resolving the case through mediation, the Court finds that Defendants have demonstrated "good cause" sufficient to opt out of ADR. Western District of New York Alternative Dispute Resolution Plan, Rule 2.2(C).

(Order Granting Moton to Opt out of ADR, at 2, ECF No. 20.) Defendant filed two motions to opt out, ECF No. 10, and ECF No. 17. Neither were ever opposed by Plaintiff, despite one of the motions, ECF No. 10, pending on the docket for two months and 18 days. Therefore, there is no issue of material fact present as the parties did agree to engage in lengthy arbitration, and met the high burden to opt out of the Court's Alternate Dispute Resolution Plan because of it.

> 14. Mr. Jackling again was informed by MetLife in its February 29, 2016 that his right to arbitrate had not yet occurred because he was never notified by the Partnership about a denial in error. (Jackling Declaration 66-68) (Exhibit S).

> Defendant responds:

> Brighthouse disputes Plaintiff's Fact 14, and refers to Exhibit S, which speaks for itself. The letter was addressed to Plaintiff's counsel, and declines the request to submit to arbitration in the absence of evidence that the Plaintiff received a notice from the New York State Partnership that benefits may have been denied in error. Exhibit S also advises that arbitration is an "option," (¶¶ 1-2), and that Plaintiff "may request arbitration before taking legal action" if it received notice from the New York State Partnership that its request for benefit was denied in error. In all instances, it is clear that the arbitration is an option, not mandatory, and not a prerequisite to bringing a lawsuit. In addition, Plaintiff was receiving legal advice regarding the letter and its meaning.

(Def's Reply ¶ 14.) The letter which is addressed to Mr. Jackling's counsel, does not discuss precluding his right to arbitrate. Furthermore, the parties eventually agreed to arbitrate this matter, as discussed at length below. This does not create a material issue of fact.

> 15. Mr. Jackling did not file an arbitration based on the letter from Metlife. (Jackling Declaration 69-70).

> Defendant responds:

> Brighthouse disputes Plaintiff's Fact 15, and refers its replies to Plaintiff's Facts 13 and 14. Brighthouse also objects because the

statement is selfserving, and asserts that Plaintiff relied on a letter from Brighthouse to his counsel. Further, Exhibit S, speaks for itself, and declines the request to submit to arbitration in the absence of evidence that the Plaintiff received a notice from the New York State Partnership that benefits may have been denied in error. Exhibit S also advises that arbitration is an "option," (¶¶ 1-2), and that Plaintiff "may request arbitration before taking legal action" if it received notice from the New York State Partnership that its request for benefit was denied in error (¶2). In all instances, it is clear that the arbitration is an option, not mandatory, and not a prerequisite to bringing a lawsuit. In addition, Plaintiff was receiving legal advice regarding the letter and its meaning.

(Def's Reply ¶ 15.) As stated above, the letter Mr. Jackling's counsel received does not preclude him from arbitration. This does not create a material issue of fact.

16. Mr. Jackling learned that the Insurance Company had not notified the State of New York regarding his prior denials. (Jackling Declaration 71-74).

Defendant contends "Brighthouse disputes Plaintiff's Fact 16, and refers to its response to Plaintiff's Fact 12. Brighthouse disputes the relevance of Jackling Declaration ¶¶71-74." (Def's Reply ¶ 16.) Plaintiff's contention is that the Insurance Company did not notify the New York Partnership about the claims. However, as stated above, the claims were closed due to inaction, rather than denied. Plaintiff's assertion does not create a material issue of fact precluding summary judgment.

17. Finally, on September 15, 2016, for the first time, Mr. Jackling was informed that he had the right to file an arbitration. (Jackling Declaration 75) Exhibit T-U.

Defendant responds: "Brighthouse disputes Plaintiff's Fact 18 [sic]. Plaintiff did not have the right to file an arbitration. Rather, Brighthouse agreed to arbitration, even though Plaintiff was not entitled to arbitration, and refers to Exhibit U, which speaks for itself." (Def's Reply ¶ 17.) Plaintiff's contention is that he was given the right to an arbitration, whereas Defendant states that he was barred, but

Defendant agreed to it regardless. This does not create a material issue of fact precluding summary judgment.

> 18. As mentioned in the Defendant's statement of facts, the parties entered into tolling agreement for one year and 30 days—starting May 17, 2017—June 17, 2018. (Jackling Declaration 76-77 (Exhibit W).
>
> 19. On March 1, 2018, Plaintiff received an email from Ms. Karl of NYS Partnership confirming his right to move forward with arbitration. Declaration 78. (Exhibit X).
>
> Defendant responds:
>
> Brighthouse disputes Plaintiff's Fact 19, and refers to the document, which speaks for itself. The email did not confirm Plaintiff's right to move forward with arbitration. It advised that any arbitration would be outside the New York State Partnership based on the timeframe, and that he did not require permission from the New York State Partnership to proceed to arbitration.

(Def's Reply ¶ 19). The email Plaintiff received outlines that arbitration, if any, would not involve the New York State Partnership. Regardless, this contention does not create a material issue of fact.

> 20. Prior to the expiration of the Tolling Agreement, Mr. Jackling filed for arbitration. (Jackling Declaration 77, 79).
>
> 21. During the arbitration, William Jackling received critical documents for the first time including the Plans of Care from September 2007. (Jackling Declaration 80) (Exhibit Z).
>
> Defendant states:
>
> Dispute. In July 2014, Plaintiff requested all relevant claims documentation, and it was sent to him in July 2014. By letter dated August 1, 2014, Plaintiff acknowledged receipt of "comprehensive assessments" from "Carelink and Long Term Solutions." (May 6, 2022 Declaration of Jeffrey L. Kingsley, ¶¶1-2, Exhibits AB). Specifically, he stated, "I believe there are a number of things missing:
>
> ***
>
> 2. Comprehensive Assessments from Upstate Medical, *like the ones you have sent from CareLink and Long Term Solutions.*"

Jackling Declaration Exhibits Z and AA, which he states in Paragraph 80 he did not receive prior to arbitration, are the benefit eligibility assessment from CareLink, which he acknowledges receipt on August 1, 2014. Further, the Long Term Solutions benefit eligibility assessment from January 2014 was also provided to him. (Kingsley May 6, 2022 Declaration, ¶¶1-2, Exhibits A-B).

(Def's Reply ¶ 21.) Plaintiff does not provide support for the contention that he did not have these documents prior to arbitration. Plaintiff's assertion raises no material issue of fact precluding summary judgment.

22. Those documents that were in the possession of Brighthouse but provided to Mr. Jackling for the first time indicated that Brighthouse had performed plans of care that required Mrs. Jackling to receive services for her loss of the ADLs. (Jackling Declaration 82) (Exhibit AA).

As stated above, this assertion does not raise a material issue of fact precluding summary judgment.

23. At the time, Mr. Jackling was seeking to continue to obtain payment for services, but informed that the private aids were not covered because they were not licensed or certified. (Jackling Declaration 83) (Exhibit BB).

24. Mr. Jackling reached out to the Partnership and learned that New York does not provide licensing, oversee or regulate non-skilled home aides. (Jackling Declaration 84) (Exhibit CC).

Defendant asserts:

Brighthouse objects to Plaintiff's Fact 24 on the basis that it improperly characterizes Plaintiff's request. Plaintiff requested whether agencies providing "companion care, and/or homemaker where there is no hands on services" required certification or licensure. Thus, Plaintiff inquired about companion care agencies, not "home health aides." It is irrelevant. Further, Plaintiff requested the information from the New York State Department of Health, not the New York Partnership for Long Term Care.

(Def's Reply ¶ 24.) Plaintiff's assertion does not match the record, and does not raise a material issue of fact. Plaintiff's Exhibit CC, attached to Jackling's

declaration, is apparently a communication from the New York State Department of Health stating in relevant part, "The NYS Department of Health does not license, regulate or oversee *companion care agencies*." (Jackling Decl. Ex. CC at 1 (emphasis added), ECF No. 64-28.)

> 25. Mr. Jackling received a letter where Brighthouse recognized that there is no license for non-skilled care. (Exhibit DD) (Jackling Declaration 85).

> 26. Mr. Jackling suffered a brain aneurysm and ultimately withdrew from the arbitration—even though he believed he was pausing it. (Jackling Declaration 86-90).

Defendant states: "Brighthouse can neither admit nor dispute. It objects to the statement because it is self-serving, without prior record citation,[2] and irrelevant." (Def's Reply ¶ 26.) His reasoning of why he withdrew from arbitration, or his belief that he was merely pausing it, does not create a triable issue of material fact precluding summary judgment. In his declaration, Jackling states in pertinent part:

> 89. On September 10, 2019, I emailed the American Arbitration Association regarding my withdrawal from arbitration, on my doctor's recommendation, due to the aneurysm.

> 90. I was not aware that in drafting this email, it would be interpreted as me wishing to withdraw completely. My intention was only to pause the arbitration until I was in my right mind to continue.

(Jackling Decl. ¶¶ 89–90, ECF No. 64.) The plain meaning of his declaration is that he thought he was merely pausing the arbitration, but the "interpretation" by someone he does not identify was that he was withdrawing from it. Someone identified in Jackling's Exhibit FF as "pro se administrator 5" informed him the

---

[2] The Court does not understand this basis, "without *prior* record citation," for objecting to Plaintiff's assertion. In the statement, Plaintiff cites to his declaration.

arbitration could not be reopened. Whoever the mysterious "pro se administrator 5"

is, Jackling has not shown that it was Defendant.

> 27. Mr. Jackling sought to reopen the on March 13, 2020 arbitration but
> learned that Brighthouse objected to it as a new arbitration. (Jackling
> Declaration 90-91) (Exhibit EE).

Plaintiff's citation to his Exhibit EE does not support his contention that

Brighthouse objected to reopening the arbitration. In fact, the same "pro se

administrator 5" referred to above simply wrote: "I have had this request reviewed

and was advised the above matter would not be re-opened. If you want to proceed

with arbitration a new demand will need to be filed." (Jackling Decl. Ex. EE at 1.)

> 28. The AAA informed Mr. Jackling on March 16, 2020 arbitration would
> not be opened. (Jackling Declaration 92) (Exhibit EE).

> 29. On March 20, 2020 Governor Andrew Cuomo stated that there was
> a pause of the statute of limitations of all actions. (Jackling Declaration
> 93) (Exhibit GG).[3]

> 30. Plaintiff filed the instant action that was removed to federal court.

Having determined that no material issue of fact precludes summary

judgment, the Court now addresses Plaintiff's contention that further discovery is

needed per Fed. R. Civ. P. 56(d). On page two of his memorandum of law opposing

summary judgment (ECF No. 66), Plaintiff contends:

> New York does not nor cannot provide licensing for individuals
> providing the type of care specified [sic] paragraph 7, A, B, and C, as a
> result the court should at a minimum, have a hearing to determine
> whether or not that was possible to be able to fulfill the requirements,
> especially here where plaintiff had not been able to conduct a single
> deposition of Defendant—ever in arbitration or in the instant matter—
> regarding any issue. Rule 56 D [sic] precludes a motion for summary

---

[3] Plaintiff's Ex. GG informs that the governor tolled the statute of limitations
beginning on March 20, 2020. The exhibit does not indicate that tolling began any earlier
than that date. (Jackling Decl, Ex. GG, ECF No. 64-32.)

judgment, where there's still additional discovery in that area to be occurring.

(Pl.'s Mem. of Law at 2, ECF No. 66.) Later in the same memorandum, he states,

> Or at minimum, the court should deny the Summary Judgment pursuant to Rule 56 D to allow for additional testimony and depositions of the individuals that drafted the letters that are in question as well as discovery regarding the process by which New York Partnership was never notified of the previous denials.

(*Id.* at 13.) Still later, he writes: "The question of fact regarding the viability of a proof of loss is a factual dispute that requires additional discovery pursuant to Rule 56 (D) [sic] because here Plaintiff has not been able to perform all the necessary discovery for the matter." (*Id.* at 21.) Finally, he concludes:

> Additionally, in reviewing the discovery that was provided, certain documents were not provided due to anticipation of litigation defenses that occurred almost 5 years prior to when Mr. Jackling was informed even had the right to bring any type of arbitration much less litigation. Here, the Court should not grant a summary judgment motion prior to reopening discovery through a Rule 56 (d) ruling.

(*Id.* at 22–23.) A thorough discussion of the requirements of a claim under Fed. R. Civ. P. 56(d) is contained in *Bowden v. City of Buffalo*, No. 6:15-CV-06565 EAW, 2021 WL 1162879 (W.D.N.Y. Mar. 26, 2021):

> The lack of discovery, in and of itself, cannot justify denial of a properly supported motion for summary judgment.
>
> Although Fed. R. Civ. P. 56(d) permits a party to oppose a motion for summary judgment on the ground that he needs discovery, any such opposition must demonstrate "by affidavit or declaration that, for specified reasons, [the party] ... cannot present facts essential to justify its opposition." *Whelehan v. Bank of Am. Pension Plan for Legacy Companies-Fleet-Traditional Ben.*, 5 F. Supp. 3d 410, 420 (W.D.N.Y. 2014), *aff'd*, 621 F. App'x 70 (2015). "The affidavit must explain: '[(1)] the nature of the uncompleted discovery; [(2)] how the facts sought are reasonably expected to create a genuine issue of material fact; [(3)] what efforts the affiant has made to obtain those facts; and [(4)] why those efforts were unsuccessful.' " *Cont'l Cas. Co. v. Marshall Granger & Co.,*

*LLP*, 921 F. Supp. 2d 111, 127 (S.D.N.Y. 2013) (quoting *Hoffmann v. Airquip Heating & Air Conditioning*, 480 F. App'x 110, 112 (2d Cir. 2012)).

"The failure to file a Rule 56(d) affidavit sufficiently explaining the need for additional discovery 'is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.' " *Lunts v. Rochester City Sch. Dist.*, 515 F. App'x 11, 13-14 (2d Cir. 2013) (quoting *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137 (2d Cir. 1994)); *see Cross v. State Farm Ins. Co.*, 926 F. Supp. 2d 436, 446 (N.D.N.Y. 2013) (stating that if "a proper affidavit or declaration" is not submitted in support of a Rule 56(d) motion, the "application fails on this basis alone"); *see also Whelehan*, 5 F. Supp. 3d at 421 ("Merely referencing the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for a Rule 56(d) affidavit.").

*Bowden*, 2021 WL 1162879, at *7. Plaintiff has not met the requirement for a favorable ruling under 56(d).

## STANDARD OF LAW

Summary judgment is appropriate if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, (1986). The Court should determine summary judgment based on "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Once the moving party has met its initial burden, "the nonmoving party must come forward with specific facts to show there is a factual question that must be resolved at trial." *Swartz v. Berkshire Life Ins. Co.*, No. 99 CIV. 9462 (JGK), 2000 WL 1448627 (S.D.N.Y. Sept. 28, 2000). The non-moving party must make a sufficient showing in

their favor, as "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Id.* "If the non-moving party has failed to make a sufficient showing on an essential element of his case on which he has the burden of proof, then summary judgment is appropriate." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

## DISCUSSION

### *Jurisdiction*

This Court has jurisdiction over this matter under 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between Plaintiff and the proper Defendant and the damages sought are more than $75,000, exclusive of interest and costs. (Compl. at 6, ECF No. 1)

In a case where jurisdiction is based on diversity of citizenship, a federal court applies the conflict of law principles of the forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.,* 313 U.S. 487, 496–97 (1941). In *Brink's Ltd. v. South African Airways,* 93 F.3d 1022 (2d Cir.1996), the Court of Appeals for the Second Circuit explained the approach used by New York courts:

> In contract cases, New York courts now apply a "center of gravity" or "grouping of contacts" approach. Under this approach, courts may consider a spectrum of significant contacts, including the place of contracting, the places of negotiation and performance, the location of the subject matter, and the domicile or place of business of the contracting parties. New York courts may also consider public policy "where the policies underlying conflicting laws in a contract dispute are readily identifiable and reflect strong governmental interests." The traditional choice of law factors, the places of contracting and performance, are given the heaviest weight in this analysis.

*Id.* at 1030–31 (citations omitted); *see also APC Commodity Corp. v. Ram Dis Ticaret A.S.,* 965 F. Supp. 461, 467 (S.D.N.Y.1997). In *Swartz v. Berkshire Life Ins. Co.*, the court wrote:

> The parties agree that New York has the most significant contacts in this case because the plaintiff was a resident of New York during the period in which he purchased the four disability policies, and also in April 1991, when the plaintiff alleges that he became totally disabled, and the cause of action accrued. While Berkshire is incorporated and maintains its principal place of business in Massachusetts, it is qualified by the New York State Superintendent of Insurance to conduct business in New York State. The application of New York law is appropriate under these circumstances.

*Swartz v. Berkshire Life Ins. Co.*, No. 99 CIV. 9462 (JGK), 2000 WL 1448627, at *3 (S.D.N.Y. Sept. 28, 2000).

In the case at hand, Plaintiff is a resident of Honeyoe Falls, New York, and purchased the policies at issue in New York, while Defendant is incorporated in Delaware but conducting business in New York. (Compl. ¶ 32–33.) This case mirrors *Swartz* in this regard. New York law is applicable here.

### Causes of Action

The Plaintiff alleges the following causes of action in his complaint:

1. Breach of Contract

2. Bad Faith in Breach of Contract

3. Fraud

4. Deceptive Acts and Practices: Article 22a, Section 349 of The General Business Law of The State of New York

### *Breach of Contract Claim is Time Barred*

The statute of limitations for a breach of contract in New York is six years. N.Y. C.P.L.R. 213(2) (McKinney 2022). "The six-year period of CPLR 213(2) is ubiquitous in contract litigation. It applies to all types of contracts and contract claims, including breach of warranty, unless a different time is prescribed in some other statute." N.Y. C.P.L.R. 213 (McKinney 2022); Alexander, Practice Commentaries, McKinney's Cons Laws of NY, CPLR 213(2) [2019 ed]. New York Insurance Law prescribes a different statute of limitations and requires that health insurance, including long term care policies, include a provision stating:

> No action at law or in equity shall be brought to recover on this policy prior to the expiration of sixty days after written proof of loss has been furnished in accordance with the requirements of this policy. No such action shall be brought after the expiration of three years after the time written proof of loss is required to be furnished.

N.Y. Ins. Law § 3216(d)(1)(K) (McKinney 2022). Limitation period provisions included in a written policy are enforceable even if they are within a shorter period than is prescribed by law. N.Y. C.P.L.R. 201; *John J. Kassner & Co., Inc. v. City of N.Y.*, 46 N.Y.2d 544, 551 (1979). This sort of agreement does not conflict with public policy. *John J. Kassner & Co., Inc.*, 46 N.Y.2d at 551. "Under New York law, a cause of action for breach of contract accrues and the statute of limitations commences when the contract is breached." *T & N PLC v. Fred S. James & Co. of New York*, 29 F.3d 57, 59 (2d Cir. 1994).

Following the provision outlined in New York Insurance Law and the Brighthouse Policy's Limitation of Legal Actions provision, three years is the appropriate statute of limitations for this breach of contract claim. N.Y. Ins. Law

§ 3216(d)(1)(K) (McKinney); The Limitation on Legal Actions states: "You may bring action to recover on this policy after 60 days from the date the Proof of Loss has been given. However, no action may be brought against Us after more than three years from the date of proof should have been due." (Traveler's Insurance Group Policy at 18, ECF No. 64-1.) Plaintiff has asserted claims for services used at different times between 2000 and 2014 while his wife was chronically ill and he was paying into the insurance policy in question. (Pl.'s Mem. of Law in Opp'n at 5, ECF 66; Compl. ¶10, ECF No. 1-1.) Based on this information, the three-year statute of limitations on this claim was exhausted in 2017, years before the existing action was commenced in 2020. (Compl. ¶10, ECF No. 1-1.) For those reasons, the Court finds that the Plaintiff's breach of contract claim is time barred.

Plaintiff claims that a letter sent by MetLife precluded his ability to arbitrate the action. (Pl's Mem. of Law, at 5, ECF No. 66.) The letter cited by Plaintiff states:

> As you know, the front page of Mr. Jackling's policy states it "participate in the New York State Partnership for Long Term Care Program. It further states that the insured has an option for arbitration "where You have been notified that Your claim may have been denied in error." As noted in your letter, the policy further explained the speech on page 9, under the section entitled "Dispute Resolution," which state that the insured "may request arbitration before taking legal action to resolve the denied benefit authorization request only if you are notified by the partnership that your benefit authorization request might have been denied and error." Indeed, we previously address his feature in our letter to you dated April 13, 2015, where we stated that "you may request arbitration *only* if you are notified by the New York partnership office at your request for benefits may have been denied and error. At that time you will be able to proceed with arbitration."

(Pl's Counterstatement of Facts, at 14, ECF No. 64-18.) Plaintiff states:

> Here, the letter was intended to prevent Mr. Jackling from filing an arbitration before taking legal action. The letter effectively froze Mr. Jackling from pursuing legal action until notification from New York

State. Counterstatement of Facts 14. (Jackling Declaration 69-70). In fact, this February 29, 2016, letter groups the prior claims and states that for Mr. Jackling to have filed an arbitration on any of the other matters, New York State has to first notify him that the policy may have been denied in error. Counterstatement of Facts 14, 15 . (Jackling, Declaration 66-68). It was not until September 15 , 2016, that New York State first notified Mr. Jackling that he had a right to arbitrate before taking legal action- as expressly set forth in the Long Term Care Insurance Contract. (Jackling Declaration 75) Counterstatement of Facts 17. Eight days earlier, Brighthouse had agreed to arbitration to New York State asserting defenses such as statutes of limitations to New York- while actively informing Mr. Jackling that h is right to file an arbitration had not yet occurred. Regardless, the earliest possible date that the Statute of Limitations could have begun is September 15 , 2016. Eight months later (244 days later), Mr. Jackling and Brighthouse entered into a tolling agreement that was entered into on May 17, 2017 until June 17, 20 18 which extended the statute of limitations. Mr. Jackling filed the arbitration on June 16 , 2018 but then withdrew from the arbitration on September 10, 2019. After he suffered a brain aneurysm, he was advised by his doctor, the stress in the lawsuit caused medical issues that required him deposit the arbitration period as such Mr. Jacking attempted to pause the arbitration. (Jackling Declaration 86-90). Counterstatement of Facts 26. However, in that state of mind, unknowingly withdrew the arbitration. And when he later tried to reopen the arbitration, he learned that Brighthouse denied him the ability to return back to arbitration period. (Jackling Declaration 86-90). Counterstatement of Facts 27. It was his misunderstanding of the legal process that led to the instant litigation.

(Pl's Mem. of Law, 5–6, ECF No. 66.) Jackling is conflating the ability to arbitrate, which depended on Defendant providing denial information to the New York Partnership Program, with his ability to bring a lawsuit, for which there was not a prerequisite. He mistakenly believed that he needed to arbitrate the claims before he could bring a lawsuit. This belief is not supported by the evidence before the Court.

### *Cause of Action for Breach of the Implied Duty of Good Faith is Not Cognizable Here*

Plaintiff's second cause of action is labelled "bad faith breach of insurance contract." New York law "does not recognize a separate cause of action for breach of

the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *Harris v. Provident Life & Acc. Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002). Accordingly, New York law does not permit this claim to proceed since it is based on the same facts supporting Plaintiff's breach of contract claim. Therefore, the Court grants Defendant judgment on this claim.

### *Fraud Claim is Time Barred*

The statute of limitations for an action based upon fraud under New York law is six years from the date the cause of action accrued or two years from the date the fraud was discovered or could have been discovered with reasonable diligence, whichever is longer. N.Y. C.P.L.R. 213 (McKinney 2022). Plaintiff alleges that Defendant misrepresented that it would fully pay for coverage when it knew it would not do so. (Compl. ¶ 63, ECF No. 1-1.) This misrepresentation, if it was made, occurred at the time of purchase of the Policy in January 2000, 20 years prior to the filing of this Complaint. (Def.'s Mem. of Law, 7–8, ECF No. 47-51.) In the alternative, if the Court applies the two-year limitation based on discovery of the alleged fraud, the discovery date would be Following the measure of two years from the date the fraud was discovered, at the latest, this would be June 13, 2014, when Jackling wrote to Defendant stating in part, "from the beginning you denied benefits for this, claiming the care providers had to be licensed." (Grasso Decl. Ex. W, ECF No. 47-39.) Two years following that letter means the limitations period expired on June 13, 2016. This lawsuit was not commenced until 2020. Accordingly, Plaintiff's fraud claim is time barred.

### *The New York General Business Law § 349 Claim is Time Barred*

A claim under New York General Business Law § 349 cannot be brought after the expiration of time limited by the laws of the state. N.Y. C.P.L.R. 202 (McKinney). An action under General Business Law §349 must be commenced within three years after the plaintiff suffers the injury, pursuant to New York CPLR §214(2). *Gaidon v. Guardian Life Ins. Co. of Am.*, 96 N.Y.2d 201, 210 (2001); *Corsello v. Verizon New York, Inc.,* 18 N.Y.3d 777, 789 (2012); *National Convention Services, LLC v. Applied Underwriters Captive Risk Ass. Company, Inc.*, 239 F. Supp. 3d 761, 788 (S.D.N.Y. 2017).

Plaintiff's New York General Business Law § 349 cause of action alleges injury resulting from misrepresentations made at the time of Defendant's sale of the policy to Plaintiff's decedent. (Compl. ¶73, ECF No. 1-1). Plaintiff's decedent purchased the Policy in January 2000. Plaintiff was damaged for purposes of New York General Business Law § 349 in September 2007, when he was expressly advised that the Policy did not cover the claims for which he sought benefits. The applicable statute of limitations ran in September 2010. Even viewed in the light most favorable to Plaintiff, when measured from Plaintiff's June 13, 2014, letter, the statute of limitations ran in June 2017. This action was commenced well over three years after the latest date from which the statute of limitations could possibly be measured, in July 2020. Therefore, Plaintiff's N.Y. General Business Law § 349 claim is time barred.

***Plaintiff's Claims for Punitive and Consequential Damages must be Dismissed***

In New York state, punitive damages are recoverable in an ordinary breach of contract claim *if* the fraud was egregious, aimed at the public generally, and is necessary to vindicate public rights. *TVT Recs. v. Island Def Jam Music Grp.*, 412 F.3d 82, 94 (2d Cir. 2005) (citing *Rocanova v. Equitable Life Assurance Soc'y of the U.S,* 83 N.Y.2d 603, 613 (1994)). Plaintiff does not raise any instance of egregious harm in his memorandum in opposition. (Pl.'s Mem. of Law in Opp'n, ECF No. 66.) Plaintiff does not make any specific allegations, nor did he provide evidence to illustrate to the Court that egregious fraud occurred. Plaintiff fails to submit proof of egregious harm aimed at the public. Thus, punitive damages are not authorized.

Consequential damages are available in a breach of contract for insurance claims if they are reasonably contemplated by the parties at the time of or prior to contracting. *Panasia Estates, Inc. v. Hudson Ins. Co.* 10 NY.3d 200, 203 (2008) (citing *Bi-Economy Mkt., Inc. v. Harleysville Ins. Co. of N.Y.*, 10 N.Y.3d 187, 193 (2008); and *Kenford v. County of Erie*, 73 N.Y.2d 312, 319 (1989)). Plaintiff does not claim in his memorandum in opposition, that consequential damages were reasonably contemplated ahead of time. (Pl.'s Mem. of Law in Opp'n, ECF No. 66.) Plaintiff does not address consequential damages at all. (Pl.'s Mem. of Law in Opp'n, ECF No. 66.)

Defendant's Reply also mentions that Plaintiff did not respond to the motions to dismiss Plaintiff's punitive and consequential damage claims:

> Plaintiff admits that he did not cite to any class action complaint in his Complaint, and did not submit any facts or arguments in opposition to the portion of Brighthouse's Motion seeking dismissal of the New York Gen. Bus. Law § 349 Cause of Action. Likewise, Plaintiff did not oppose

the portion of Brighthouse's Motion seeking dismissal of Plaintiff's
claims for punitive and consequential damages.

(Def's Reply Memorandum of Law, at 11 n.7, ECF No. 72-6.) Consequently, the Court

dismisses the claims for punitive and consequential damages.

### Even if Not Time Barred, Plaintiff's Causes of Action for Bad Faith, Fraud, and N.Y. General Business Law § 349 Must Be Dismissed

Even if the claims for bad faith, fraud, and N.Y. General Business Law § 349

are not time barred, Defendant argues that Plaintiff fails to provide proof of the

claims. (Def.'s Mem. of Law, 31–35, ECF No. 47-51.) "New York does not recognize an

independent claim for first-party bad faith refusal to comply with an insurance

contract, viewing it as duplicative of a claim for breach of the covenant of good faith

and fair dealing." *H&H Env't Sys., Inc. v. Evanston Ins. Co.*, No. 6:18-CV-06315 EAW,

2019 WL 1129434, at *8 (W.D.N.Y. Mar. 12, 2019). Plaintiff did not provide evidence

of bad faith on the part of Defendant outside of his claims related to the breach of the

contract. Accordingly, his bad faith claim must be dismissed.

Federal Rule of Civil Procedure 9(b) sets forth a heightened pleading standard

for allegations of fraud stating that "a party must state with particularity the

circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The Second Circuit

has explained that a complaint complies with the particularity requirement of

Federal Rule of Civil Procedure 9(b) if it is able to: "(1) specify the statements that

the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and

when the statements were made, and (4) explain why the statements were

fraudulent." *Gander Mountain Co. v. Islip U-Slip LLC*, 923 F. Supp. 2d 351, 365

(2013) (citing *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1175 (2d Cir. 1993)).

Here, Plaintiff fails to adequately allege particular and specific fraudulent statements in his complaint. (Pl.'s. Mem. of Law in Opp'n at 21–22, ECF No. 66; Compl. ¶ 63, ECF No. 1-1.) Further, "where a plaintiff pleads both a fraud claim and a breach of contract claim, the plaintiff must distinguish the two by (1) demonstrating a legal duty separate from the duty to perform under the contract, (2) demonstrating a fraudulent misrepresentation collateral or extraneous to the contract, or (3) seeking special damages caused by the misrepresentation and unrecoverable as contract damages." *Gander Mountain Co. v. Islip U-Slip LLC*, 923 F. Supp. 2d 351, 366 (2013). Plaintiff failed to adequately do so, arguing that he was required to arbitrate the claims before he could file suit, which is entirely unsupported by the evidentiary proof submitted on this motion. Consequently, Defendants are entitled to judgment on Plaintiff's fraud claim.

Turning to Plaintiff's N.Y. General Business Law § 349 claim, that claim applies solely to matters affecting the public and not private contract disputes. *Kirk v. Heppt*, 532 F. Supp. 2d 586, 591 (S.D.N.Y. 2008). As discussed regarding the punitive damages, Plaintiff fails to submit proof of actions undertaken by Defendant to cause harm to the public at large. (Pl.'s Mem. of Law in Opp'n at 18, ECF 66.) Therefore, Defendant is entitled to judgment on Plaintiff's N.Y. General Business Law § 349 claim.

### The Policy Did Not Provide Coverage for Benefits Claimed by Plaintiff

The policy provided for Home Health Care Services to be provided by licensed medical professionals, a licensed home health care agency, or a licensed or certified home health aide not reporting through a home health agency if the Care

Coordination benefit in the policy is used, and the licensed home health aide develops a written Plan of Care. (Compl. ¶ 24, ECF No. 1-1.) Plaintiff's claim for benefits under the policy involved the use of uncertified, unlicensed, privately hired caregivers. (Def.'s Mem. of Law, at 15, ECF No. 47-51; Jacking Decl. Ex. O., ECF No. 64-14.) Plaintiff asserts that obtaining a licensed Home Health Aide I in New York state is impossible because the state does not require licensing for certain home aides. (Pl.'s Mem. of Law in Opp'n, 20–21, ECF No. 66.) Based on the New York State Department of Health Website regarding Home Care and Information for Health Care Professionals, New York State does offer licensing and certification for these types of positions. Defendant's brief cuts to the heart of the issue:

> The Policy does not reference "Aide I homemakers/caretakers/personal assistants," or "Aide I," "homemakers," "caretakers," or "personal assistants" at all, much less reference their required licensing or certification status.  While New York does not require all aides to be certified, it does offer certification for home health aides. To that end, home health aides and personal care aides (Level II) are required to take a state-approved course, which teaches a state-approved curriculum, and obtain certification. *See* New York Public Health Law §3613, 10 NYCRR §700.2 and NYCRR §505.14(e). In fact, there is an online registry of certified home health care professionals. *See* New York Public Health Law §3613. Simply stated, it was possible for claimant to employ certified home health aides but he simply chose not to do so.

(Def's Mem of Law, at 10, ECF No. 47-51.) In addition, this information is publicly available on the state health department web page: Home Care: Information for Health Care Professionals, https://www.health.ny.gov/facilities/home_care/professional.htm (*last accessed* Jul. 7, 2022).

Plaintiff's affirmative defense that fulfilling the terms of the contract would be impossible has no merit. (Pl.'s Mem. of Law in Opp'n at 18–19, ECF No. 66.) Under

New York Law, impossibility is a defense to a breach of contract only when performance is rendered "objectively impossible . . . by an unanticipated event that could not have been foreseen or guarded against in the contract." *Gap Inc. v. Ponte Gadea New York LLC*, 524 F. Supp. 3d 224 (S.D.N.Y. 2021) (citing *Axginc Corp. v. Plaza Automall, Ltd.*, 759 F. App'x 26, 29 (2d Cir. 2018)). Here, there is no evidence of an unexpected event or change in the law in New York that made it impossible to comply with the terms laid out in the policy.

Plaintiff further asserts that the terms of the Policy are ambiguous regarding the arbitration clause. (Pl.'s Mem. of Law in Opp'n at 12–13, ECF No. 66.) Language in an insurance contract will be found to be ambiguous if "reasonable minds could differ as to its meaning" or is "reasonably susceptible to more than one reading." *Duane Reade, Inc. v. St. Paul Fire and Marine Ins. Co.*, 600 F.3d 190, 201 (2d Cir. 2010) (quoting *Haber v. St. Paul Guardian Ins. Co.*, 137 F.3d 691, 695 (2d Cir. 1998)).

As discussed in the impossibility section above, the terms of the Policy are clear pertaining to the type of care covered requiring that the medical professional, agency, or aide providing care be licensed. (Jackling Decl. Ex. A at 14, ECF No. 64-1; Pl.'s Mem. of Law in Opp'n at 12, ECF No. 66.) Regarding the requirement to arbitrate, the Policy is again clear that this is merely an option that the party may elect to pursue. (Jackling Decl. Ex. A at 11, ECF No. 64; Def.'s Reply Decl. at 6, ECF No. 72-6.) The language in the Policy pertaining to arbitration and dispute resolution includes the word "option" multiple times as well as "may elect" and "may request." (*Id.*)

Plaintiff also alleges he relied upon letters sent in 2015 and 2016 that stated arbitration is required and purposefully delayed the start of his lawsuit or arbitration. (Jackling Decl. Exs. D, R, S, T, and U, ECF No. 64.) These letters affirm the Policy language stating that arbitration is an *option* to pursue if the claim is denied in error, which Defendant asserts was not the case due to an appropriate denial of benefits from the lack of documentation provided by Plaintiff. (Jackling Decl. Ex. U, ECF No. 64.) Nonetheless, Defendant agreed to participate in the arbitration as a courtesy to Plaintiff. (*Id.*) Plaintiff's claim he was misled causing delay in starting his lawsuit is unsupported, as earlier discussed. For that reason, the Court rejects Plaintiff's impossibility and ambiguity defenses. Any delays caused by the arbitration process were elected by Plaintiff and do not serve as a valid defense for the statute of limitations violations.

### Plaintiff's Proof of Loss is Inadequate, Unauthenticated and Otherwise Falsified

"The purpose of a proof of loss 'is that the insurer may be able intelligently to form some estimate of his rights and liabilities before he is obliged to pay.'" *First Roumanian Am. Congregation v Guideone Mut. Ins. Co.*, 862 F.Supp.2d 293, 310 (S.D.N.Y. 2012) (*quoting Wachtel v. Equitable Life Assur. Soc. of United States*, 266 N.Y. 345, 352 (1935)). New York liberally construes proof of loss requirements. *See Wachtel,* 266 N.Y. at 351. Insurance benefits are not owed in the absence of verifiable proof of loss. *See* New York Insurance Law § 3216(d)(1)(F), (G), (H) and (K) (applicable to long term care policies, and mandating policies contain proof of loss requirements).

To receive benefits for the care utilized between 2000–2014, Plaintiff was required to provide Proof of Loss (Jackling Decl. Ex. A at 20, ECF No. 64-1.) Plaintiff

asserts he did not submit the bills throughout that time because Defendant informed him the aides needed to be licensed. (Jackling Decl. Ex. O, ECF No. 64-14.) Defendant contends that it informed Plaintiff what documents were necessary to adequately provide proof of loss. (Def.'s Mem. of Law at 28–30, ECF No. 47-51.) Plaintiff then submitted documents consisting of unclear charts that were not sufficient to show the type of care provided, and by whom, to meet the requirements for Proof of Loss. (Def.'s Mem. of Law at 29, ECF No. 47-51; Jackling Decl. Ex. O, ECF No. 64-14.) Plaintiff maintains that the materials provided were all that were necessary to provide proof, even when Defendant informed Plaintiff that further support documentation was necessary. (Def.'s Mem. of Law at 10, ECF No. 47-51; Jackling Decl. Ex. O, ECF No. 64-14.) Plaintiff also alleges that, in 2007, Defendant provided medical professionals to review the health condition of Plaintiff's wife and this review should have provided adequate Proof of Loss to Defendant. (Pl.'s Mem. of Law in Opp'n at 21, ECF No. 66.) This contention made by Plaintiff does not have enough evidentiary support to show it adequately met the requirement. (*Id.*) Plaintiff is unable to provide sufficient reasoning for why he did not submit adequate documentation during the period of care and afterwards. (*Id.*)

In addition, the evidence offered by Plaintiff in the form of Proof of Loss is unreliable, was not provided during discovery, and was allegedly falsified. (Def.'s Mem. of Law at 15–16, ECF No. 47-51; Def.'s Reply Mem. of Law at 8–9, ECF No. 72-6.) Under Federal Rule of Civil Procedure 26, litigants have a duty to disclose any materials that the party may use to support its claims and defenses. Fed. R. Civ. P. 26(a)(1)(A)(ii). Exhibit O was not provided during initial disclosure with no acceptable

excuse and thus cannot be used as support for Plaintiff. Fed. R. Civ. P. 26(a)(1)(E);

(Def's Reply., at 11, ECF No. 72-6.)  Defendant explains the unusual origins of exhibit

O:

> Jackling Exhibit O ("Exhibit O") (ECF No. 64-14) is an apparently altered document. This is not the first time the Court and Brighthouse has had to address this issue. See ECF No. 28; see also ECF No. 47-52, ¶¶69-97. The documents enclosed with Exhibit O contain the same information as documents which Brighthouse has established (and Plaintiff has admitted) Plaintiff altered. (Compare Exhibit O, ECF No. 64-14 with ECF Nos. 28 and 47-52, ¶¶69-97.) Rather, on September 26, 2014, Plaintiff sent a 26-page fax to Brighthouse. (ECF Nos. 47-16, ¶40 and 47- 42). The first page of Exhibit O matches Page 2 of the September 26, 2014 fax. (ECF No. 47-42, with a date stamp of September 26, 2014). The second page of Exhibit O, on which there is a handwritten note stating it was faxed on November 13, 2014, matches the second page of a letter faxed to Brighthouse on November 13, 2014. (ECF Nos. 47-16, ¶43 and 47-44, with a date stamp of November 13, 2014). The pages of Exhibit O are in different fonts and the first page advises the submission includes charts showing daily aide duties. No such chart is included with Exhibit O. Further, at no time did Brighthouse request income tax or investment account information. Exhibit O is therefore unreliable, and may not create a question of fact. See Carroll v Leboeuf, Lamb, Greene & MacRae, L.L.P., 614 F.Supp.2d 481, 484-485 (S.D.N.Y. 2009) (While a duplicate of an original is generally admissible to the same extent as an original, Fed. R. Evidence §1003 authorizes a court to exclude a duplicate where genuine question is raised as to the authenticity of the original). Here, Mr. Jackling's Declaration does not even get so far as to state that Exhibit O is a "true and correct copy." While inadequate to serve as Proof of Loss in any event, the document should be disregarded.

(Def's Reply., at 8, ECF No. 72-6.) This unreliable document is not enough to create

a triable question of fact that may preclude summary judgment. *Swartz v. Berkshire*

*Life Ins. Co.*, No. 99 CIV. 9462 (JGK), 2000 WL 1448627 (S.D.N.Y. Sept. 28, 2000).

### Plaintiff Fails to Allege Good Cause for Delay in Filing Claims

Plaintiff asserts if other defenses fail, there was good cause under N.Y.

C.P.L.R. 204 in his delay to file claims based on injuries and illness suffered that led

to the removal from arbitration and the delay in pursuing litigation. (Pl.'s Mem. of Law in Opp'n at 6, ECF No. 66.) That statute provides as follows:

> (a) Stay. Where the commencement of an action has been stayed by a court or by statutory prohibition, the duration of the stay is not a part of the time within which the action must be commenced.

> (b) Arbitration. Where it shall have been determined that a party is not obligated to submit a claim to arbitration, the time which elapsed between the demand for arbitration and the final determination that there is no obligation to arbitrate is not a part of the time within which an action upon such claim must be commenced. The time within which the action must be commenced shall not be extended by this provision beyond one year after such final determination.

N.Y. C.P.L.R. 204 (McKinney 2021). Plaintiff knew at the outset that he was not *obligated* to submit his claim to arbitration. Therefore, the extension authorized by section 204 is not applicable.

Defendant contends Plaintiff provided no clear evidence of his injury to explain the delay that surpassed the statute of limitations on these claims. (Def.'s Reply Mem. of Law at 5–6, ECF No. 72-6.) The evidence submitted on this motion shows that Plaintiff's delay in filing suit was a result of his, or his counsel's, mistaken belief that arbitration was a prerequisite to filing suit. The mistake in the understanding of the terms of the Policy is not a valid defense to establish good cause for the delay and the expiration of the statute of limitations. The Court finds that the assertions by Plaintiff are not sufficient to create a question of fact, and for that reason, Defendant is entitled to judgment.

This is a sad outcome for Mr. Jackling who has suffered the loss of his wife because of ALS. Unfortunately, his legal arguments are unsupported by the evidence and his response to Defendant's statement of facts failed to raise any material issue

requiring trial. Consequently, Defendant has prevailed in showing an entitlement to judgment and no need for a trial.

## CONCLUSION

For all the foregoing reasons, the Court grants Defendant's motion for summary judgment (ECF No. 47) on all causes of action in the complaint. The Clerk of Court will enter judgment for Defendant and close this case.

IT IS SO ORDERED.

DATED:      July 10, 2022
            Rochester, New York

                                        /s/Mark W. Pedersen
                                        MARK. W. PEDERSEN
                                        United States Magistrate Judge